387 So.2d 1145 (1980)
Roy HARRIS and Sandra Harris
v.
Frank M. LEE and Manchester Insurance.
No. 66684.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 6, 1980.
*1146 Seale, Macaluso & Ross, Ron S. Macaluso, Hammond, for plaintiffs-applicants.
Owen, Richardson, Taylor, Mathews & Atkinson, Richard Creed, Baton Rouge, for defendants-respondents.
WATSON, Justice.
This is a suit for damages resulting from an automobile accident. A writ was granted to consider whether the Court of Appeal, 377 So.2d 1352 was correct in giving the Louisiana Insurance Guaranty Association a credit for medical expenses paid by plaintiffs' group health insurer, and in reducing the award of damages.
The automobile of plaintiffs, Roy and Sandra Harris, was struck from the rear by a car owned and driven by defendant, Frank M. Lee. Lee's attention had been diverted by a lighted cigarette which had fallen in his lap. The damages to the Harris' vehicle exceeded its value of $700. Passenger Sandra Harris received personal injuries. Lee was insured by Manchester Insurance Company, which is insolvent; its liability was assumed by the Louisiana Insurance Guaranty Association.

LIGA'S LIABILITY
It is undisputed that LIGA is only responsible for covered claims in excess of $100. LSA-R.S. 22:1382(1)(a). Therefore, LIGA is entitled to a credit of $100 against the $5,000 limits of Manchester's policy.
The trial court correctly found that LIGA is not entitled to a credit for the medical payments Roy Harris received under his Allstate group health policy. Manchester would not be entitled to deduct these payments under the collateral source rule, and LIGA is deemed the insurer to the extent of its obligation on covered claims. LSA-R.S. 22:1382(1)(b); Hickerson v. Protective National Insurance Company of Omaha, 383 So.2d 377 (La.,1980); and, Billeaudeau v. Lemoine, 381 So.2d 511 (La.,1980). LIGA contends that LSA-R.S. 22:1386, "non-duplication of recovery", requires that the credit be given to LIGA even though not available to Manchester. LSA-R.S. 22:1386(1) states:
"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy."
However, that section of the Insurance Guaranty Association Law is limited by LSA-R.S. 22:1377 which provides:
"This Part shall apply to all kinds of direct insurance, except life, health and accident, title, disability, mortgage guaranty, and ocean marine insurance."
Health and accident insurance is specifically excluded from the Insurance Guaranty Association Law and the nonduplication of recovery provision does not apply to payments by health and accident insurers. Because the damages exceed the limits of the Manchester policy, there is no double recovery. It is questionable whether LSA-R.S. 22:1386 is applicable in any situation where the damages exceed LIGA's liability, because the statutory intention is to prevent duplication of recovery.
The judgment of the trial court is reinstated to award plaintiff, Sandra Harris, $5,000 and plaintiff, Roy Harris, $700 against the defendants, Louisiana Insurance Guaranty Association and Frank M. Lee, jointly, severally and in solido, but the judgment is amended to award the Louisiana Insurance Guaranty Association a credit of $100 against the award to Sandra Harris.

LEE'S LIABILITY
Sandra Harris was recovering from a hysterectomy when the accident occurred *1147 on July 26, 1975. She was first treated in the emergency room of the Seventh Ward General Hospital in Hammond by her gynecologist, Dr. Charles D. Alford. She complained primarily of abdominal and low back pain. Dr. Alford did not testify, and it was stipulated that no inferences were to be drawn from that fact. Dr. Alford subsequently referred her to Dr. Luis F. Matta, an orthopaedic surgeon. Dr. Matta did not testify but receipts show visits to him in July, August and September of 1975. On July 29, 1975, in Matta's absence, she saw Dr. G. J. Blacker. Both Matta and Blacker diagnosed a neck sprain, a contusion of the right elbow and a lumbosacral strain. Sandra Harris was then referred to Dr. Thomas B. Flynn, a specialist in neurological surgery, who first saw her on September 22, 1976. Sandra Harris said that she went to Dr. Alford in the one year interim between her last visit to Dr. Matta and her first visit to Dr. Flynn. There are no medical bills, statements or reports to corroborate this testimony. There is a letter in evidence in which Dr. Flynn thanks Dr. Alford for his referral of Sandra Harris, but Dr. Flynn stated in deposition that his notes showed the referring doctor to be Dr. Matta. On the basis of her history, Dr. Flynn felt that Sandra Harris might have a "midline lumbar disc herniation" (J-2). He admitted her to Baton Rouge General Hospital on October 10, 1976, for conservative treatment with traction and physical therapy. Eight days of treatment were unsuccessful in ameliorating her symptoms. A myelogram was performed on October 18 which was within normal limits. Dr. Flynn could find no objective neurological findings of injury but stated in his hospital discharge summary on October 20 that the patient had a great deal of "functional overlay" (J-7). She was anxious and psychoneurotic, but he found nothing physically wrong with Sandra Harris. Dr. Flynn testified in deposition that Sandra Harris gave him a history of intermittent back pain prior to the accident. However, she explained at trial that the back pain she had had prior to the accident was a different type and related to female disorders. Sandra Harris went to see Dr. Eric L. Lensgraf, an expert in the field of chiropractic, on June 21, 1977. She made several visits to Dr. Lensgraf for treatment of her back and neck. Trial was on September 22, 1978. The Court of Appeal found an unexplained gap in Mrs. Harris' medical treatment between her last visit to Dr. Flynn and her first visit to Dr. Lensgraf. The conclusion was that her disability did not extend beyond November 4,1976, when she failed to keep a follow-up appointment with Dr. Flynn. The Court of Appeal noted that Dr. Lensgraf had not recommended any limitation of physical activity to Sandra Harris and therefore reduced the award for loss of wages from $12,500 to $5,981.05. The proven medical expenses were found to total $1,612.01, slightly more than the $1,354.09 given by the trial court. The sum of $300 for future medical expenses was deleted. The Court of Appeal reduced the quantum of general damages from $45,000 to $15,000, the largest amount that could be justified for Sandra Harris' injuries.
Defendant Lee's defense was undertaken by the Louisiana Insurance Guaranty Association, which did not plead lack of means or introduce any evidence of his inability to respond in damages. His discovery deposition was taken by plaintiffs and reveals his occupation as a carpenter, but no other information relating to his income.
As the Court of Appeal noted, the testimony of Dr. Alford might have been helpful in explaining the gaps in Sandra Harris' medical treatment. It might also have illuminated the source of her functional overlay of anxiety and neurosis. In the absence of any corroborating evidence from medical or lay witnesses to connect Sandra Harris' subjective complaints with the accident, the Court of Appeal did not err in amending the awards to correct an abuse of discretion. Therefore, the judgment of the Court of Appeal is affirmed insofar as it awarded judgment to Roy Harris on behalf of the community against Frank M. Lee of $7,675. The judgment of the Court of Appeal is affirmed in its award to Sandra Harris against Frank M. Lee of $10,000 but *1148 is amended to add to that sum the $100 deductible credited against LIGA's liability.
For the foregoing reasons, the judgment of the Court of Appeal is amended in part and affirmed in part.
AMENDED AND AFFIRMED.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice, concurring.
I concur in the result reached by the majority because I agree with the majority's questioning whether R.S. 22:1386 is applicable where, as here, the plaintiff's damages, minus any recovery from other insurance, exceed LIGA's liability; and the intent of the statute is to reduce LIGA's exposure by denying a claimant double recovery.
However, I am not fully convinced that R.S. 22:1386(1) and its "exhaustion" provisions are not normally applicable to a health and accident policy claim of a plaintiff. Nor am I convinced that this case is controlled by Hickerson v. Protective National Insurance Co., 383 So.2d 377 (La.1980). In Hickerson, we were confronted with subrogation considerations and circular claims.[1] Here, there are no subrogation rights involved and thus the cases are distinguishable. Additionally, if R.S. 22:1386 does not apply to a situation like the present, involving health and accident insurance where there are no subrogation rights, then I can not perceive of any situation in which it applies.
NOTES
[1] The issue presented in Hickerson was whether a plaintiff, injured in a car accident, could proceed directly against LIGA, as the insurer of the defendant, or whether plaintiff had to first exhaust his claims against his own uninsured motorist insurer. If plaintiff collected from his own insurer, the insurance company would have been subrogated to the rights plaintiff had against defendant, would then have had to sue defendant, and then LIGA would ultimately have been held liable on the claim. Rather than require this multiple litigation, the Court in Hickerson held that R.S. 22:1386 did not prevent plaintiff from proceeding directly against LIGA for the damages he sustained.