INDIANA INSURANCE GUARANTY ASSOCIATION, Appellant-Defendant Below,

v.

Cassell KINER and John L. Kiner, Jr., Appellees-Plaintiffs Below.

No. 64A03–8606–CV–160.

Court of Appeals of Indiana, Third District.

Feb. 12, 1987.

---

John P. McQuillan, Merrillville, for appellant-defendant below.

Donald E. Transki, Michigan City, for appellees-plaintiffs below.

STATON, Judge.

Indiana Insurance Guaranty Association appeals from the trial court's granting of summary judgment to Cassell and John L. Kiner, Jr. The only issue upon appeal is

whether the court erred when it granted summary judgment.

We reverse.

John L. Kiner, Jr., age 14, was struck and injured by a taxi cab on June 20, 1973. A year later, he and his mother, Cassell Kiner, filed a bodily injury lawsuit in the LaPorte Superior Court against the owners and operators of the cab. The lawsuit was venued to Porter County and tried before a jury in March 1982. On March 24, 1982, a judgment of $2,000 was entered for Cassell Kiner, and a judgment of $8,000 was entered for John Kiner.

Kenilworth Insurance Company, Chicago, Illinois, was the automobile liability insurer for one or more of the judgment-defendants. Kenilworth was declared insolvent and ordered liquidated by an Illinois court on April 20, 1982. A claim was filed by the Kiners with the State of Illinois in the receivership proceedings, but no payment was received to satisfy their judgments.

The Kiners then applied to the Indiana Insurance Guaranty Association (the "Association")[1] for payment of the entire judgment amounts. The Association declined to pay the entire judgment amounts, contending that Section 7(a)(i)(1) of the Indiana Insurance Guaranty Association Law ("Guaranty Law")[2] limited its obligation to John Kiner's reasonable medical and hospital expenses and any amounts actually lost by reason of his inability to work and earn wages.

When the Association filed its motion for summary judgment in the Porter Superior Court, the trial court ruled that Section 7(a)(i)(1) of the Guaranty Law was not applicable to judgments but that it was appli-

---

1. The Indiana Insurance Guaranty Association Law is set out at I.C. 1971, 27–6–8–1 et seq. (Burns Code Ed., 1986 Repl.).

2. I.C. 1971, 27–6–8–7(a)(i)(1) provides, in pertinent part:
   In the case of *claims* arising from bodily injury ... the amount for which the association shall be obligated shall not exceed the claimant's reasonable expenses incurred for necessary medi-

cal, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services, and any amounts actually lost by reason of claimant's inability to work and earn wages or salary or their equivalent that would otherwise have been earned in the normal course of such injured claimant's employment ... (Emphasis added.)

cable only to unpaid claims.[3] Thus, treating the proceeding as if it were one of cross motions for summary judgment, the court found that the Association was obligated to pay the full amount of the Kiners' judgments. It entered judgment against the Association in the amount of $10,000 plus costs.

In reviewing a grant of summary judgment, we will affirm only if no genuine issue of material fact exists and the prevailing party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C).

Here, a genuine issue of material fact does exist since, before considering the extent of the Association's obligation to the Kiners, it must first be determined whether they fall within the class of persons protected by the Guaranty Law.

■ Insurance guaranty associations are intended to provide relief to those applicants intended to be protected, and before coverage can be extended to any applicant, he must clearly demonstrate that he is a member of the class for whose benefit the Association was established. *See Feliciano v. Oglesby* (1968), 102 N.J.Super. 378, 246 A.2d 63, 70.[4]

■ The burden is upon a claimant to show that he has met the requirements of the insurance guaranty association law. *Tschider v. Burtts* (1967), N.D., 149 N.W.2d 710, 712. And that he complied with any conditions precedent. *Gonzalez*

*v. Motor Vehicle Acc. Indem. Corp.* (1966), 266 N.Y.S.2d 640, 48 Misc.2d 958, 961.

■ The Indiana Insurance Guaranty Association Law first requires that a claimant or policyholder show that he has a "covered claim." I.C. 1971, 27–6–8–4(4) (Burns Code Ed., 1986 Repl.) provides:

> The term 'covered claim' means an unpaid claim or judgment which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer becomes an insolvent insurer after the effective date (January 1, 1972) of this chapter and (a) the claimant or insured is a resident of this state at the time of the insured event ...

However, although the facts here show that the plaintiffs have an unpaid judgment issued by an insurer who became insolvent after January 1, 1972, it has not been shown that the judgment was within the coverage and not in excess of the applicable limits of the Kenilworth insurance policy; that the Kenilworth insurance policy was one to which this chapter applies;[5] nor that the claimant or the insured was a resident of Indiana at the time of the accident.

The Insurance Guaranty Law also requires that a claimant or policyholder first exhaust his rights against any other applicable insurance policies or guaranty associations as set out in I.C. 1971, 27–6–8–11 (Burns Code Ed., 1986 Repl.).[6] There are

---

**3.** The Court interpreted the word "claims" in Section 7(a)(i)(1) to mean "unpaid claims." The Association, however, contends it refers to "covered claims" as defined in I.C. 1971, 27–6–8–4(4) (Burns Code Ed., 1986 Repl.).

**4.** There are no reported opinions construing the Indiana Insurance Guaranty Association Law. However, many states have insurance guaranty acts substantially similar to the one in Indiana. Therefore, although some differences exist between the Indiana version and the insurance guaranty association laws of other states, we will look to the case law of other states for guidance when those differences are not a factor in the determination of any particular case we cite.

**5.** This can be determined by referring to I.C. 1971, 27–6–8–4(5) and 27–6–8–4(6) (Burns Code Ed., 1986 Repl.).

**6.** I.C. 1971, 27–6–8–11 (Burns Code Ed., 1986 Repl.) provides:
(a) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under the policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of recovery under the insurance policy.
(b) Any person having a claim which may be recovered under more than one (1) insurance guaranty association or its equivalent shall seek recovery first from the association of the place

no facts showing that this was done by the Kiners.[7]

Therefore, because it has yet to be determined whether the Kiners fall within the class of persons protected by the Guaranty Law, the trial court erred in granting them summary judgment.

■ Our review does not end here because in reviewing a grant of summary judgment, this Court must also determine whether the trial court properly applied the law. *Tippecanoe Sanitary Landfill, Inc. v. Bd. of County Commissioners of Tippecanoe County* (1983), Ind.App., 455 N.E.2d 971, 974, *trans. denied.*

To determine whether the trial court properly applied the law, it is necessary to determine whether Section 7(a)(i)(1) of the Guaranty Law is applicable to judgments. If it is not applicable to judgments, then the action of the trial court was correct.

I.C. 1971, 27–6–8–7(a)(i)(1) (Burns Code Ed., 1986 Repl.) provides, in pertinent part:

> In the case of *claims* arising from bodily injury ... the amount for which the Association shall be obligated shall not exceed the claimant's reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services, and any amounts actually lost by reason of claimant's inability to work and earn wages or salary or their equivalent that would otherwise have been earned in the normal course of such injured claimant's employment ... (Emphasis added.)

The Association contends that the word "claims" in Section 7(a)(i)(1) refers to "covered claims" as defined in I.C. 1971, 27–6–8–4(4). That statute provides that the term "covered claim" means an unpaid claim or judgment. If the Association is correct in its assertion that "claim" means "covered claim," it follows that judgments as well as unpaid claims are limited by Section 7(a)(i)(1).

However, the lower court found that the word "claim" in Section 7(a)(i)(1) does not mean "covered claim," but refers to "unpaid claims." In its view, unpaid claims are subject to the limitations of Section 7(a)(i)(1), but judgments are not.

In interpreting a statute, we are to ascertain and give effect to the intent of the legislature. *Foremost Life Ins. Co. v. Dep't of Ins.* (1980), 274 Ind. 181, 409 N.E.2d 1092, 1095. In determining the legislative intent, the language of the statute itself must be examined, including the grammatical structure of the clause or sentence in issue. If possible, effect and meaning must be given to every word, and no part of the statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Id.,* 409 N.E.2d at 1096. Further, a statute is to be examined and interpreted as a whole, giving common and ordinary meaning to words used in the English language and not over-emphasizing a strict literal or selective reading of individual words. *Id.*

Therefore, to determine whether the word "claims" in Section 7(a)(i)(1) refers to "covered claims" or "unpaid claims," it is necessary to look to other provisions of the Insurance Guaranty Law.

Once the term "covered claim" is defined in I.C. 1971, 27–6–8–4(4), the statute goes on to state: "... 'Covered claim' shall be limited as provided in section 7 ... of this chapter ..." Section 7 includes within its subsections several limitations, including the limitations set out in Section 7(a)(i)(1). However, I.C. 27–6–8–4(4) does not make a

---

of residence of the insured except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property, and if it is a workmen's compensation claim, he shall seek recovery first from the association of the residence of the claimant. Any recovery under this chapter shall be re-

duced by the amount of recovery from any other insurance guaranty association or its equivalent.

**7.** A covered claim is subject also to the limitations and the requirements as set out in I.C. 1971, 27–6–8–3; 27–6–8–4(4)(3): and 27–6–8–7(a)(i) (Burns Code Ed., 1986 Repl.).

distinction among these subsections. It merely states that a covered claim is limited as provided in Section 7. Thus, the plain meaning of this provision is that a covered claim is limited by *all* of Section 7. The provision does *not* state that judgments are exempt from this limitation. Nor does any other provision of the Guaranty Law.

I.C. 1971, 27–6–8–7(b)(i) (Burns Code Ed., 1986 Repl.) states, in part: "The Association may: ... Appear in, defend, and appeal any action on a covered claim but it shall have no obligation to pay any amount in excess of the provisions of (Section 7)." Again, no distinction is made between unpaid claims and judgments. *All* covered claims are limited by *all* of Section 7.

No provision of the Insurance Guaranty Law separately defines the word "claim." And, in the absence of explicit words from the legislature directing us to treat judgments differently than unpaid claims, we must treat them the same.

The trial court stated that if judgments were to be treated the same as unpaid claims, then the use of the word "judgment" in I.C. 27–6–8–4(4) becomes meaningless. However, that section tells us that a covered claim may arise in one of two different ways—through an unpaid claim or through a judgment. *See* I.C. 1971, 27–6–8–17 (Burns Code Ed., 1986 Repl.) ("As to any covered claims arising from a judgment ..."). Thus, a claimant with a judgment rather than an unpaid claim against an insolvent insurer (who meets the other requirements of the Insurance Guaranty Law) is not barred from pursuing a remedy from the Association.

Such a construction of Section 7(a)(i)(1) is consistent with the purposes of the Insurance Guaranty Law as set out in I.C. 1971, 27–6–8–2 (Burns Code Ed., 1986 Repl.).[8]

And, it is consistent with the law regarding insurance guaranty associations or funds in other states. The courts in other jurisdictions do not treat judgments any differently than they do unpaid claims—they limit the amount of recovery upon both. *See, e.g., Lucas v. Illinois Ins. Guar. Fund* (1977), 52 Ill.App.3d 237, 10 Ill.Dec. 81, 367 N.E.2d 469 (Where injured automobile passengers recovered *judgments* against an insured motorist in excess of the limits of the insured's policy, the policy held by the insured motorist was issued by an insurer that became insolvent, and the injured passengers recovered a portion of their losses under the uninsured motorist provisions of their own policies, the injured passengers were entitled to recover from the State Insurance Guaranty Fund the limits of the policies issued by the insolvent insurer less the amounts recovered from the uninsured motorist provisions of their own policies. *Id.* 10 Ill.Dec. at 83, 367 N.E.2d at 471 (emphasis added)); *Nianick v. Edgewater Beach Hotel* (1975), 28 Ill.App.3d 33, 328 N.E.2d 82 (The legislature, in creating the Illinois Insurance Guaranty Fund, did not intend that the Fund would pay all judgments but merely that it would pay covered claims. *Id.,* 328 N.E.2d at 84); and *Florida Ins. Guar. Ass'n v. Dolan* (1978), Fla.App., 355 So.2d 141 (The requirement that the claim be "unpaid" applies equally well to judgments as to pre-judgment bodily injury claims. *Id.* at 142.)[9]

---

**8.** I.C. 1971, 27–6–8–2 (Burns Code Ed., 1986 Repl.) provides:

The purpose of this chapter is to provide a mechanism for the payment of claims under certain insurance policies to avoid excessive delay in payment and to avoid excessive financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of this protection among insurers.

**9.** Thus, in Indiana, a claimant must first show that he has a "covered claim" before he may

recover from the Association. However, recovery is limited to the applicable limits as provided in the insurance policy from which the claim arises. Recovery also may not exceed $100,000. I.C. 1971, 27–6–8–7(a)(i) (Burns Code Ed., 1986 Repl.). Unlike other states, Indiana adds another limitation in Section 7(a)(i)(1): Bodily injury claims and judgments limit the Association's obligation to reasonable medical and hospital expenses and actual lost wages, among other things.

Since Section 7(a)(i)(1) is applicable to judgments, the trial court did not properly apply the law. Even if the Kiners are able to show that they fall within the class of persons protected by the statute, their recovery from the Association is limited to John Kiner's reasonable medical and hospital expenses and any amounts actually lost by reason of his inability to work and earn wages.

Reversed.

GARRARD, P.J., and HOFFMAN, J., concur.