549 A.2d 1157

**Kenneth W. McMICHAEL, et al**

v.

**Ronald R. ROBERTSON, et ux.**

**No. 277, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 10, 1988.

James K. Carmody, Annapolis, for appellants.

Ronald H. Jarashow (William A. Franch, and Franch & Jarashow, P.A., on the brief), Annapolis, for appellees.

Argued before WILNER, BISHOP and ALPERT, JJ.

ALPERT, Judge.

This is yet another appeal whose outcome is decided by that elusive creature known as "legislative intent." It

involves an inquiry into the nature, powers, and responsibility of the Property and Casualty Insurance Guaranty Corporation (PCIGC) as created by Sections 504 through 519 of Article 48A of the Maryland Annotated Code. Kenneth W. McMichael and PCIGC (defendants) have appealed a decision of the Circuit Court for Prince George's County denying them the right to set off certain payments made to the plaintiffs from various sources. Ronald R. Robertson (plaintiff) has filed a cross-appeal, claiming that the trial court erred in permitting a setoff deduction for the money he recovered from his insurance company under its personal injury protection (PIP) benefits plan.

## FACTS

The facts are uncomplicated, yet they give rise to a legal question of first impression in this jurisdiction. On August 6, 1987, the court entered a judgment in favor of the plaintiffs in the amounts of $75,000.00 for Ronald R. Robertson and $200,000.00 for his wife, Shirley Robertson, and $1.00 for loss of consortium, against the defendants, Kenneth W. McMichael and Charter Line Bus Company. The defendants had been insured through Transit Casualty Insurance Company, which had been declared insolvent. PCIGC is the Maryland authority that provides a defense to, and pays claims against, an insured when the insured's insurance company becomes insolvent. PCIGC, in this case, did provide the defense and paid part of the judgment, namely $97,480 to Shirley Robertson, $44,808.60 to Ronald R. Robertson, and $1.00 jointly to both plaintiffs. When the remainder of the judgment went unpaid, Plaintiffs, on September 16, 1987, filed a writ of garnishment against PCIGC.

PCIGC responded to the writ of garnishment by asserting that setoffs exist, which it is entitled to deduct from the total judgment. PCIGC alleges that it is entitled to a deduction for any amount received by the plaintiffs from any source that paid the plaintiffs for any loss related to their injuries, regardless of whether the plaintiffs must

repay that source. Under this theory, PCIGC claimed the following setoffs:

| Category | Shirley Robertson | Ronald Robertson |
|---|---|---|
| Uninsured Motorists Ins. | $ 20,000.00 | $20,000.00 |
| PIP (under D.C. Law)[1] | $ 43,184.14 | $ 8,551.40 |
| Blue Cross/Blue Shield | $ 16,394.83 | |
| Union Sick Leave Benefit | $ 22,841.03 | |
| Deductible | $ 100.00 | $ 100.00 |
| | $102,520.00 | $28,651.40 |

Defendants claim that the plaintiffs have received benefits from the above named sources that should be deducted from their judgment. The plaintiffs received their injuries in an automobile accident that occurred on November 27, 1983 in Washington, D.C. Plaintiffs' automobile was insured by Allstate Insurance Company. Each plaintiff received from Allstate $20,000.00 in uninsured motorist benefits, the policy limit. In addition, plaintiffs received personal injury protection benefits in the amounts indicated above. Plaintiffs also possessed medical insurance coverage through Blue Cross/Blue Shield (hereinafter sometimes referred to as BC/BS). These benefits have since been paid back to BC/BS because, under the plaintiffs' contract with them, BC/BS became subrogated to the proceeds of any settlement or judgment received in the plaintiffs' favor. This subrogated amount was paid to BC/BS out of the proceeds received from the partial payment by PCIGC.

Mrs. Robertson was an employee of Safeway and a member of the Food Employees Labor Relations Association and United Food & Commercial Workers Health and Welfare Fund. Pursuant to an agreement between Safeway and the Union, the Union provides its members with disability bene-

---

1. The accident occurred in the District of Columbia. At that time, District of Columbia law required all insurers, even out-of-state insurers, that provided PIP benefits to meet the D.C. statutory minimum requirement of $50,000 in coverage per victim. D.C.Code Ann. §§ 35–2104(a), (c)(5) and 2107 (1981). Maryland law, however, requires only $2,500 in coverage. Md.Ann.Code art. 48A § 539 (1957).

fits. Mrs. Robertson received the amount indicated above, but she has since repaid that amount out of the proceeds she received from PCIGC. She was required, under the Union Contract, to repay the Union if she recovered payments from a liable third-party for her injuries.

On December 4, 1987, Judge Jacob Levin in the Circuit Court for Prince George's County, heard arguments on the writ of garnishment against PCIGC. Both parties agreed that the Uninsured Motorist (UM) payments were properly deducted from the amount PCIGC must pay on the judgment. On December 16, 1987, the court entered judgment on the garnishment against PCIGC, finding that PCIGC was entitled, as a setoff against the amount due the plaintiffs, the amount paid by Allstate Insurance Company under Uninsured Motorists coverage and Personal Injury Protection. On the other hand, the court found that PCIGC was not entitled to any amounts that had been paid by Blue Cross/Blue Shield, union sick leave benefits, or "deductible" amounts. From this Order, PCIGC appealed, followed by the cross-appeal of the Robertsons.

Appellants assert that the trial court erred in denying them a right to setoff the amounts plaintiffs received from BC/BS, union sick leave benefits, and the $100.00 deductible. Cross–appellants contend that the trial court erred in permitting PCIGC to deduct the amount they received from PIP benefits.

### LAW

Subtitle 33 of the Maryland Insurance Code is entitled "Property and Casualty Insurance Guaranty Corporation." It contains sixteen sections, §§ 504 through 519 of Article 48A of the Maryland Code. These sections relate to the organization, operations, duties, power and responsibilities of the PCIGC.[2]

---

**2.** PCIGC's statutory existence is traceable to ch. 703 of the Acts of 1971, which created its precursor, then known as the Maryland Insurance Guaranty Association (MIGA), a nonprofit, unincorporated

Section 504 provides that the purpose of this subtitle is to "provide a mechanism for the prompt payment of *covered claims* under certain insurance policies and to avoid financial loss to residents of Maryland who are claimants or policyholders of an insurer, ... which has become insolvent; and to provide for the assessment of the cost of such payments and protection among insurers." (Emphasis supplied). The term "covered claims" is defined in § 505(c)(1) to mean "obligations, ... of an insolvent insurer which arise out of the insurance policy contracts of the insolvent insurer issued to residents of this State or which are payable to residents of this State on behalf of insureds of the insolvent insurer."

The procedure for setting forth a claim is set out in Section 512(a):

Any person having a covered claim against an insurer, including surety, under any provision in an insurance policy or surety bond, other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy or bond. Any amount payable on a covered claim under this subtitle shall be reduced by the amount of any recovery under such insurance policy or surety bond.

The present case involves statutory interpretation. The cardinal rule of statutory construction is that the intention of the Legislature be carried out. Such intention is to be gathered from the words of the statute. *Kaczorowski v.*

---

legal entity created to aid claimants and policyholders of insolvent insurance companies. *See Maryland Ins. Guaranty Ass'n v. Muhl,* 66 Md.App. 359, 361, 504 A.2d 637 (1986) and *A.S. Abell Pub. Co. v. Mezzanote,* 297 Md. 26, 464 A.2d 1068 (1983). This act closely tracked the provisions of a model act proposed in 1969 by the National Association of Insurance Commissioners. The model act has served as a prototype for insurance guaranty associations in over forty states.

Chs. 161 and 440 of the Acts of 1986 made a number of changes in the 1971 Act. In particular, it changed MIGA's name to PCIGC, designated it as a private, nonprofit corporation, declared that it was not an agency or instrumentality of the State and changed the method of selection of the Board of Directors.

*City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987); *Atlantic Richfield Co. v. Sybert,* 295 Md. 347, 361, 456 A.2d 20 (1983); *Blum v. Blum,* 295 Md. 135, 140, 453 A.2d 824 (1983). The statute should be construed to effectuate legislative intent. *Comptroller of Treasury v. Fairchild Industries, Inc.,* 303 Md. 280, 284, 493 A.2d 341 (1985); *Reid v. State,* 302 Md. 811, 816, 490 A.2d 1289 (1985); *Willis v. State,* 302 Md. 363, 374, 488 A.2d 171 (1985). If there is no ambiguity or obscurity in the language of the statute, there is no need to look elsewhere to ascertain the intent of the General Assembly. *Ryder Truck Lines, Inc. v. Kennedy,* 296 Md. 528, 535, 463 A.2d 850 (1983); *Harden v. Mass Transit Administration,* 277 Md. 399, 406, 354 A.2d 817 (1976). Because the plain language of the statute does not clearly indicate what is a "covered claim," we must read and consider all sections of the Act together in order to glean the legislature's intent with respect to deductions required by § 512(a).

## PIP

PCIGC is a corporation set up by the General Assembly in 1971 "to provide a mechanism for the prompt payment of covered claims under certain insurance policies and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...." Art. 48A § 504(a). It stands in the shoes of the insolvent insurer and subject to applicable policy limits and conditions, is liable for "covered claims" that could have been brought against the insurer. § 508(a); *Muhl* 66 Md.App. at 368, 504 A.2d 637.

■ The parties do not dispute the fact that UM insurance benefits were properly deducted as a setoff. The parties agreed that § 512(a), which requires a person having a covered claim against an insurer to "first exhaust his rights under such policy," means that plaintiffs were required to pursue their own insurance company for UM protection. The parties further agreed that PCIGC was entitled, pursuant to § 512(a), to deduct the amount re-

ceived by them for UM benefits because UM coverage is considered a "covered claim" within the meaning of the act. UM coverage is mandatory in Maryland. (Art. 48A § 538–547A). Therefore, both defendant's and plaintiff's insurance policies contained UM coverage. When defendant's insurance company became insolvent, PCIGC stepped into its shoes and was obligated to continue UM protection, consequently UM coverage is a covered claim of the insured because it was an obligation of the insolvent insurance company (§ 505(c)(1)). Under section 512(a), PCIGC is entitled to setoff the amount of money recovered by claimants for covered claims from its liability and, therefore, UM payments were properly deducted.

■ We hold that PIP benefits also fall within the category of "covered claims," and therefore were properly deducted as a setoff from the judgment. Both uninsured motorist (UM) insurance and PIP insurance are mandatory in Maryland. Subtitle 35, Art. 48A § 538–547A. Therefore, defendant's insurance policy also contained PIP coverage. When defendant's insurance company became insolvent, PCIGC stepped into its shoes and was required to continue PIP protection. PIP benefits were the obligation of the insolvent insurer and, therefore, constitute a "covered claim." § 505(c)(1); *see Insurance Commissioner of the State of Maryland v. Property Casualty Insurance Guaranty Association*, 313 Md. 518, 546 A.2d 458 (1988). In this case, the Court of Appeals defined the term "covered claim" to mean "the obligation of an insolvent insurer." *Id.* at 530, 546 A.2d 458.[3]

PCIGC's liability for "covered claims," however, is limited. Section 512(a) provides that a person having a covered

---

**3.** The Court of Appeals, however, in this case declined to render an opinion as to whether PCIGC would be entitled to reduce its liability by PIP payments received from a claimant's insurer. *Id.* 313 Md. at 530, n. 7, 546 A.2d 458.

claim against PCIGC must first exhaust the rights he may have under other insurance policies before asserting a claim against PCIGC. Any amount PCIGC is obligated to pay on a covered claim will be reduced by the amount of any recovery received by the claimant from such other insurance policy.

Consequently, the Robertsons were required under the statute to first exhaust claims against their own insurance company, Allstate, for UM and PIP coverage before asserting claims against PCIGC. Allstate paid plaintiffs $20,000 each under their UM coverage and paid Mrs. Robertson $43,184.14 and Mr. Robertson $8,551.40 under their PIP coverage. PCIGC has the right under section 512(a) to deduct these amounts against its own liability.

### *Blue Cross/Blue Shield and Union Sick Leave Benefits*

The next issue involves the question of whether the BC/BS and Union payments the Robertsons received can be considered covered claims and consequently be deducted as a setoff from the amount PCIGC is obligated to pay. We hold that the plan of health insurance administered by BC/BS and the disability plan administered by the Union are not covered claims within the meaning of the act.

As noted previously, a covered claim means the obligation of an insolvent insurer. *See Insurance Commissioner of the State of Maryland v. Property Casualty Insurance Guaranty Association, supra* at 530, 546 A.2d 458. Because neither plan was the obligation of defendant's original insurance company, neither one can be considered a covered claim.

We find the reasoning of the Pennsylvania court in *Bullock v. Pariser*, 311 Pa.Super. 487, 457 A.2d 1287 (1983), persuasive on this issue. In *Bullock*, the plaintiff had received a payment from her own liability insurance carrier

following an injury. When the tortfeasor's insurance company became insolvent, Pennsylvania Insurance Guaranty Association (PIGA) undertook the defense of the action that had been filed by plaintiff and maintained that it was entitled to setoff the sum paid to plaintiff by her own disability carrier. The Superior Court of Pennsylvania held that PIGA was not entitled to setoff the sum paid to the injured plaintiff by her disability insurer.

In reaching this decision, the court relied on its discussion in *Sands v. PIGA*, 283 Pa. Superior Ct. 217, 423 A.2d 1224 (1980) regarding what constitutes a "covered claim."[4] They defined a covered claim to mean an "unpaid claim arising under an insurance policy of an insolvent insurer. 423 A.2d at 1277. Applying this definition to the facts in the case, they found that Mrs. Bullock's (plaintiff's) recovery from her disability insurer was not a "covered claim," because it did not result from the insolvency of an insurer. The Pennsylvania court further reasoned that:

This result is consonant with the purpose of the Act, which is, in relevant part, ". . . to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. § 1701.102. The non-duplication of recovery provision of § 502 of the Act[5] functions to prevent windfall judgments, such as might occur where, for example a tortfeasor's insurance company becomes insolvent, and a claimant seeks recovery on his own

---

**4.** The Court of Appeals cited this case with approval in *Insurance Commissioner of the State of Maryland v. PCIGC, supra* 313 Md. at 530, 546 A.2d 458.

**5.** 40 P.S. § 1701.503(a) is similar to Maryland's non-duplication of recovery provision. Section 503(a) provides that:

Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy.

uninsured motorist coverage, as well as from PIGA as successor to the insolvent insurer. In such a situation, absent the provisions of § 503, a claimant might obtain a much greater recovery than he would have received had the tortfeasor's insurance company remained solvent. Such a double recovery would exceed the loss-prevention purposes of the Act. This is not the case here. Mrs. Bullock is in no better position than she would have been if Penn Mutual had remained solvent, and PIGA is not entitled to setoff.

*See also Pritchett v. Clifton,* 738 F.2d 319 (8th Cir.1984) (Missouri Insurance Guaranty Association was not entitled to setoff against the amount plaintiff recovered under her medical insurance policy against its own liability); *Harris v. Lee,* 387 So.2d 1145 (La.1980) (Louisiana Insurance Guaranty Association was not entitled to a credit for medical expenses paid by plaintiff's group health insurer, and hence could not reduce its damages by those payments); *Alabama Insurance Guaranty Association v. Stephenson,* 514 So.2d 1000 (1987) (Alabama Insurance Guaranty Association was not entitled to deduct from its damages the health insurance benefits the injured party received.)

■ In the case at bar, BC/BS benefits were paid by the health care insurer for medical bills, hospitalization, etc., regardless of the fault of the tortfeasor or whether a judgment was entered against the tortfeasor. Likewise, the Union benefits were paid regardless of any liability of a judgment against the tortfeasor. The Union benefit is provided to an employee in lieu of the employer's sick leave benefits pursuant to the contract between the Union and Safeway, Mrs. Robertson's employer. She received these benefits because she was a member of the Union and had sufficient rights accrued, and by virtue of her missing work due to injury. Thus, neither payment arose out of the obligation of the insolvent insurer. Therefore, Mrs. Robertson's recovery from BC/BS and Union Disability benefits

cannot be considered a "covered claim" and will not be set off from the amount of her recovery from PCIGC.

### *$100 Deductible*

■ Finally, PCIGC contends that it was entitled to deduct $100.00 from each claimant pursuant to section 508(a) of the Act.

This section provides, in pertinent part:

> [S]uch obligation shall include only that amount of each covered claim which is in excess of $100.00 and less than $300,000.00. However, the Corporation shall pay the full amount of any covered claim arising out of a workmen's compensation policy.

PCIGC interprets this last sentence to mean they can deduct $100.00 from all claims except those arising under a workmen's compensation policy. They cite other sections in the Insurance Code as proof that there is a statutory policy of deducting the first $100.00.[6]

It is undisputed that PCIGC is only responsible for covered claims in excess of $100. Therefore, PCIGC is entitled to deduct $100.00 from its liability. *See also Harris v. Lee,* 387 So.2d at 1146, and *Sands v. PIGA,* 423 A.2d at 1225.

Accordingly, the judgment of the Circuit Court for Prince George's County is affirmed insofar as it deducted UM and PIP payments, but is amended to add to that sum the $100.00 deductible credited against PCIGC's liability.

JUDGMENT MODIFIED AND AS MODIFIED AFFIRMED. COSTS TO BE PAID BY APPELLANTS.

---

6. Specifically, they cite The Maryland Automobile Insurance Fund, Art. 48A § 243H(a)(1), which states:

> Claims for the death of or personal injury to a qualified person or for damages to property in excess of $100.00 ...

and § 243–I(b), which provides:

> There shall be deducted from the applicable maximum amount set forth in subsection (a) of this section or from the amount of the judgment, whichever is smaller, the total of the following:
> (1) From any judgment or portion thereof representing damages to real or personal property, one hundred dollars ($100.00).