**INDIANA INSURANCE GUARANTY ASSOCIATION, Appellant–Third–Party Defendant,**

v.

**Kenneth D. DAVIS, M.D., Appellee–Defendant/Third Party Plaintiff.**

No. 82A05–0101–CV–18.

Court of Appeals of Indiana.

May 23, 2002.

Andrew W. Hull, Indianapolis, IN, Attorney for Appellant.

David B. Allen, Indianapolis, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge.

On July 23, 1996, Plaintiff–Appellee Kimberly Murray ("Murray") filed a Proposed Complaint against Defendant/Third Party Plaintiff–Appellee Kenneth D. Davis, M.D. ("Dr. Davis") with the Indiana Department of Insurance alleging that Dr. Davis provided her with negligent medical treatment. Dr. Davis had provided medical and surgical treatment to Murray from 1986 to 1995. Murray presented her claim to a medical review panel, which rendered its opinion authorizing her to file a complaint on March 5, 1999. Murray filed the instant action alleging medical malpractice on May 18, 1999.

Dr. Davis was insured by Physicians Insurance Company of Indiana, now known as Medical Assurance of Indiana, for claims arising from his medical practice from September 1, 1985 to September 1, 1990. From September 1, 1990 through the duration of Dr. Davis' treatment of Murray, Dr. Davis was insured by P.I.E. Mutual Insurance Company ("P.I.E.") for claims arising from his medical practice. On March 23, 1998, P.I.E. was ordered into liquidation by the Ohio Department of Insurance. Murray's claim was pending at the time of the liquidation of P.I.E.

Third–Party Defendant–Appellant Indiana Insurance Guaranty Association ("IIGA") assumed Dr. Davis' defense after the liquidation of P.I.E. However, IIGA advised Dr. Davis that, according to its interpretation of the law, IIGA had an obligation to pay only $6,341.52 in the event that Dr. Davis was found to have committed medical malpractice. IIGA's rationale was that since IIGA is obligated for amounts up to $100,000.00 by statute, and Blue Cross has already paid $93,658.48 of Murray's medical bills, that IIGA is liable for the difference in the event that a judgment is entered in favor of Murray. Dr. Davis filed a third-party complaint for declaratory judgment adding IIGA as a third-party defendant to the action. Dr. Davis, joined by Murray, and IIGA filed cross motions for summary judgment regarding the extent of IIGA's duty.

At the time the motions were argued, Murray had incurred $104,513.09 in medical bills, $2,113.75· in miscellaneous expenses, and $82,197.50 in lost wages as a result of the alleged negligence of Dr. Davis. Murray's health insurance provider, Blue Cross/Blue Shield, has paid $93,658.48 toward her medical bills. Davis' policy with P.I.E. provided coverage in the amount $100,000.00 per person and $300,000.00 per claim.

After hearing oral argument on the motions, the trial court entered judgment in favor of Dr. Davis, finding that IIGA was obligated to pay $93,052.11 in the event that a judgment was entered in favor of Murray. The trial court's rationale was

that Murray's medical expenses, lost wages, and miscellaneous out-of-pocket expenses totaled $186,710.59, and that amount constituted the "amount payable" for purposes of Ind.Code § 27–6–8–11. Appellant's App. 13. The trial court then reduced that amount by $93,658.48, the amount of the medical bills paid by Blue Cross. *Id.* IIGA appeals from this judgment.

IIGA's position on appeal is that the trial court incorrectly defined "amount payable." IIGA argues that the trial court should have defined the "amount payable" as Davis' policy limit of $100,000.00, which is also the statutory cap. However, IIGA argues that the trial court properly found that the amount payable should be reduced by the amount of the medical bills that Blue Cross paid on Murray's behalf. On the other hand, Davis and Murray's position is that the trial court correctly defined "amount payable" as the total amount of Murray's damages. However, they argued below that any deduction for the payments made by Blue Cross should be taken from that total amount of damages.

On appeal, Davis and Murray advance three arguments regarding how the Blue Cross payments should be treated. First, they contend that the statute defines what comprises the special damages, by adding up the covered claims to determine the "amount payable." Deductions are then taken from that amount for payments made by all other insurers. This is the approach used by the trial court. Second, they argue that amounts paid by health insurers are no longer "covered claims" because they are no longer "unpaid claims," and that amounts owed to an insurer through subrogation rights drop completely out of the equation. Those amounts could not be included in the total amount of damages, and they could not be deducted from policy limits. Third, they

argue that the payment made by Blue Cross should not be deducted from the amount payable or from the policy limit, because it is not within the scope of the law.

 The Indiana Insurance Guaranty Association Law of 1971 is located at Ind. Code § 27–6–8–1 *et seq.* The purpose of the law is to provide for the payment of claims under certain insurance policies to avoid excessive delay in payment and excessive financial loss to claimants because of the insolvency of an insurer. *See* Ind. Code § 27–6–8–2. Before coverage can be extended to any applicant, he must clearly demonstrate that he is a member of the class for whose benefit the association was established. *See Indiana Ins. Guar. Ass'n v. Kiner,* 503 N.E.2d 923, 925 (Ind.Ct.App. 1987). The burden is on the claimant to show that he has met the requirements of the insurance guaranty association law, and that he has complied with any conditions precedent. *Id.*

 In interpreting a statute, we are to ascertain and give effect to the intent of the legislature. *Id.* at 926. In determining the legislative intent, the language of the statute itself must be examined, including the grammatical structure of the clause or sentence in issue. *Id.* If possible, effect and meaning must be given to every word, and no part of the statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Id.* Furthermore, a statute is to be examined and interpreted as a whole, giving common and ordinary meaning to words used in the English language and not overemphasizing a strict literal or selective reading of individual words. *Id.*

A claimant first must establish that he has a "covered claim." The parties do not dispute that Murray has a "covered claim" as that term is defined by statute.[1] The

---

1. In the present case, IIGA is involved in the

dispute because Dr. Davis' medical malprac-

dispute centers around the nonduplication of recovery language contained in Ind. Code § 27–6–8–11. IIGA argues that Murray was required to exhaust her benefits with Blue Cross/Blue Shield pursuant to Ind.Code § 27–6–8–11. IIGA contends that the amount payable should be interpreted as the policy limit, here $100,000.00, and that the reduction for payments made by Blue Cross/Blue Shield should come from that amount, making its obligation $6,345.12.

Indiana Code § 27–6–8–11 provides as follows:

> (a) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first the person's right under the policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of recovery under the insurance policy.

"Covered claim" is defined as follows:

> The term 'covered claim' means an unpaid claim or judgment which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer becomes an insolvent insurer after the effective date (January 1, 1972) of this chapter....

Ind.Code § 27–6–8–4(4).

Ind.Code § 27–6–8–3 provides in part as follows:

> This chapter applies to all kinds of direct insurance *except:*
>
> (1) Life, annuity, *health,* or disability insurance; ... (Emphasis added).

The language contained in the nonduplication of recovery statute is unambiguous. Although other jurisdictions have found identical language to be ambiguous, (*See e.g., Rhode Island Insurers' Insolvency Fund v. Benoit,* 723 A.2d 303, 307 (R.I. 1999)), we do not reach that conclusion with respect to Ind.Code § 27–6–8–11. Although Ind.Code § 27–6–8–11 could be worded differently to improve clarity, the language as written is sufficiently clear to allow us to ascertain and give effect to the intent of the legislature. In sum, the statute provides that a person who has a claim against the insolvent insurer, must first exhaust his or her right to recover for covered claims that person might have with other insurers. Other jurisdictions have concluded that the purpose of the nonduplication of recovery provision is to eliminate a windfall or double recovery for the same type of damages. *See id.* at 308. (purpose of provision is prevention of double recovery).

The legislature has defined a "covered claim" as "an unpaid claim or judgment which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies...." Ind.Code § 27–6–8–4(4). Ind.Code § 27–6–8–3 states that the chapter applies to all kinds of direct insurance except for health insurance, among other kinds of insurance. Medical malpractice insurance, the type of insurance at issue here, is not excluded from the application of the Act.

Therefore, the "amount payable" is determined by the amount of the covered claim, or unpaid claim or judgment, that is within the policy coverage and policy limits of the insolvent insurer. Here the statuto-

---

tice insurer became insolvent. Dr. Davis has a claim for coverage as an insured under his policy. Murray has no direct action against P.I.E., now IIGA, until a judgment is entered in her favor. Then that action would be a proceeding supplemental. Her claim would fall under the provision for an "unpaid judgment."

ry cap and the policy limit are identical. The maximum coverage is $100,000.00, *see* Ind.Code § 27–6–8–7(a)(i); *Kiner*, 503 N.E.2d at 927, so the maximum amount payable is $100,000.00. Therefore, IIGA is correct that the trial court erred by arriving at its own definition of "amount payable." The gross amount of Murray's damages exceeds the policy limits/statutory cap. The "amount payable" cannot be the gross amount of Murray's damages, because IIGA is not permitted by statute to pay a gross amount of damages that exceeds the statutory cap or policy limit whichever is less. Therefore, if any reduction would be allowed, the reduction would be taken from the policy limit/statutory cap.

There are no Indiana cases directly on point on the issue of nonduplication of recovery in situations such as this. Therefore, we turn to other jurisdictions for guidance in the interpretation of similar nonduplication of recovery language.

Some states have looked to other language in the Act and have determined that the health insurance payments sought to be deducted were excepted from applicability by the respective Act. Therefore, those health insurance payments could not be deducted from the guaranty association's liability because they were not within the scope of the law. For example, in *Alabama Insurance Guaranty Association v. Stephenson*, 514 So.2d 1000 (Ala.1987), Stephenson was injured in an automobile accident and filed an action against the tortfeasor. The tortfeasor's liability insurance company was in receivership, and was under limited operation by the Alabama Insurance Guaranty Association. The tortfeasor's liability policy limits were $10,000.00 per claim and $20,000.00 per accident. Stephenson's medical benefits provider made payments toward her medical bills pursuant to its policy with her. The question before the court was whether the Association's liability could be reduced by the amount of payments Stephenson's medical benefits provider had made on her behalf. The Act specifically provided that direct insurance such as disability, accident and health, were excepted from the application of the Act. The nonduplication provision in Alabama's Act is identical to the language contained in our Act. The Alabama Supreme Court held that the health insurance benefits Stephenson received were of the kind expressly excepted by the statute, and could not be used to reduce the Association's liability. *Id.* at 1002.

In *Harris v. Lee*, 387 So.2d 1145 (La. 1980), the Harrises were injured in an automobile accident. They proceeded against the tortfeasor, whose insurer was insolvent. The tortfeasor's insurance policy limit was $5,000.00. The Louisiana Insurance Guaranty Association Act applied to all kinds of direct insurance except health, accident, and disability, among other kinds. Mr. Harris' group health insurer made payments toward the Harrises' medical bills. The Association wanted to reduce its liability by the amount of those payments. The Supreme Court of Louisiana held that since health and accident insurance was specifically excluded from the Act, the nonduplication of recovery provision did not apply to payments by health and accident insurers. *Id.* at 1146. The court further stated that because the damages exceeded the limits of the policy, there could be no double recovery. *Id.*

In *Pritchett v. Clifton*, 738 F.2d 319 (8th Cir.1984), the Eighth Circuit Court of Appeals upheld the decision of the district court that the Missouri Insurance Guaranty Association was not entitled to reduce its liability by the amount of health insurance benefits recovered by Pritchett from her own medical insurance policy.

Other states have looked to the definition of "covered claims" within their re-

spective Acts to determine whether a deduction for health insurance payments was authorized. For example, in *McMichael v. Robertson,* 77 Md.App. 208, 549 A.2d 1157 (1988), the Robertsons, automobile accident victims, received judgments in their favor for $75,000.00 for Mr. Robertson, and $200,000.00 for Mrs. Robertson, and $1.00 for loss of consortium against McMichael and Charter Line Bus Company. Both McMichael and Charter Line had been insured through Transit Casualty Insurance Company, which was declared insolvent. PCIGC, the Maryland insurance guaranty association, did provide a defense and paid part of the judgment. However, PCIGC never satisfied the judgments. When the Robertsons filed a writ of garnishment against PCIGC, it defended by claiming entitlement to setoff or reductions based upon amounts the Robertsons received from other sources, for example, Blue Cross/Blue Shield, UIM payments, disability benefits, and personal injury protection. The Maryland Act did not clearly define "covered claims." Rather, they were defined as obligations of an insolvent insurer. However, the nonduplication of recovery language was very similar to the language included in the Indiana Act. The Maryland court held, *inter alia,* that because the Blue Cross/Blue Shield plan was not an obligation of Transit Casualty, those payments could not be "covered claims," and thus, the PCIGC was not entitled to reduce its liability by those payments. *Id.* at 1161.

In *Bullock v. Pariser,* 311 Pa.Super. 487, 457 A.2d 1287 (1983), the victim of a dog-bite sued the owners of the dog and the business where the dog was kept. The owners had a liability insurance policy with an insurer that became insolvent. The Fund stepped in to defend and claimed that it should be able to setoff from its liability the sum paid to the victim by her own disability insurer. The court held that the disability payments did not meet the definition of a "covered claim" and were not to be setoff from the Fund's liability.

In *Rhode Island Insurers' Insolvency Fund v. Benoit,* 723 A.2d 303 (R.I.1999), the Rhode Island Supreme Court found the nonduplication language to be ambiguous; however, the court held that the Fund may only offset sums recovered from a covered claim.

IIGA has directed our attention to cases from other jurisdictions as well. However, those cases can be distinguished from the case at bar. In *Richard v. Teague,* 636 So.2d 1160 (La.Ct.App.1994), the Louisiana Court of Appeal considered a claim by a contractor's employee against a school board's insolvent insurer. The nonduplication of recovery statute in this case expressly provided that the Fund *could* offset money recovered from other sources such as medical plans, etc. No such language appears in Indiana's Act.

In a pair of cases out of Illinois regarding uninsured motorist coverage, the Illinois Court of Appeals held that the express language of the Illinois Act required that any amount the claimants recovered against their own insurers for uninsured motorist coverage had to be deducted from the Fund's liability. *See Lucas v. Illinois Insurance Guaranty Fund,* 52 Ill.App.3d 237, 10 Ill.Dec. 81, 367 N.E.2d 469, 471 (1977); *Urban v. Loham,* 227 Ill.App.3d 772, 169 Ill.Dec. 805, 592 N.E.2d 292, 295 (1992). In fact, the claimants were required to exhaust their rights under their own policies before making an application with the Fund, after which the Fund was allowed to deduct from its liability the amounts recovered. Indiana's Act does not contain a similar provision.

In *Windle v. Alabama Insurance Guaranty Association,* 591 So.2d 78, 81 (Ala. 1991), the supreme court relied upon precedent in that state to conclude that cov-

ered claims may be reduced by amounts recovered under uninsured motorist policies. The court went on to hold that the reduction came from the policy limit, not from the gross amount of damages. Although the nonduplication language is virtually identical to that in Indiana's Act, the Alabama Supreme Court held in *Stephenson*, 514 So.2d 1000 (Ala.1987), that amounts recovered under health insurance, since that kind of direct insurance is outside the scope of the Act, may not be used to reduce the Fund's liability. At issue in the case at bar is set off of health insurance benefits. Therefore, *Windle* is distinguishable upon the facts of that case and the kind of insurance recovery sought to be set off.

*Stecher v. Iowa Insurance Guaranty Association*, 465 N.W.2d 887, 890 (Iowa 1991), is a case involving the question of setting off uninsured and underinsured motorist benefits. The supreme court held that although those benefits were not specifically listed in the statutory list of insurance risks that had to be set off pursuant to the nonduplication of recovery statute, they fell within a category of insurance, liability for loss arising or resulting from accidents relating to the ownership or use of vehicles, that was listed. The court agreed that no duplication of recovery would have occurred had the set off been disallowed because Stecher's damages exceeded what she would have recovered. However, the court noted that those benefits did fit within a category listed by statute.

In the present case, covered claims must be set off from the Fund's liability. The legislature has defined a "covered claim" as "an unpaid claim or judgment which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies . . . ." Ind.Code § 27–6–8–4(4). Ind.Code § 27–6–8–3 states that the chap-

ter applies to all kinds of direct insurance except for health insurance, among other kinds of insurance. Blue Cross/Blue Shield is Murray's health insurance provider. Therefore, by the plain language of the statute, Murray's claim against Blue Cross/Blue Shield is not a covered claim, and the amount payable should not be reduced by the amount of the medical payments Blue Cross/Blue Shield made on Murray's behalf.

In *Oglesby v. Liberty Mutual Insurance Company*, 832 P.2d 834, 843–44 (Okla. 1992), the supreme court held that pursuant to the nonduplication of recovery language contained in the Oklahoma Act, a claimant must exhaust all rights under covered claims against solvent insurers before proceeding against the Fund. Further, any and all payments recovered from these insurers must be set off from the Fund's statutory cap. The supreme court used the same rationale later to hold that worker's compensation benefits obtained from solvent insurers must be credited against the Fund's statutory cap. *See Mosier v. Oklahoma Property and Casualty Insurance Guaranty Association*, 890 P.2d 878, 880 (Okla.1994).

In sum, the amount payable is the amount of the Fund's liability that does not exceed the Fund's statutory cap or the policy limits, whichever is less. Because health insurance is expressly excluded from the scope of the Act, and because Murray's health insurance benefits are not within the scope of the law, the Fund's liability is not to be reduced by the amount of payments Blue Cross/Blue Shield made on Murray's behalf. The amount of the Fund's liability will have to be determined by the trial court below pursuant to the holdings of this case. Whatever amount the Fund ultimately pays to satisfy any settlement or judgment against Dr. Davis

based upon medical malpractice would represent the full policy limits.

IIGA has emphasized the fact that Indiana's Act was modified to include in the purpose statement that the Act was created to "avoid excessive financial loss to claimants," not all financial loss. Ind.Code § 27–6–8–2. IIGA argues that it should not be required to make claimants whole. In Murray's situation, IIGA contends that the legislature has determined that the first $100,000.00 of loss is "excessive" and that any loss beyond that will have to be assigned to the insured. The logic goes that since Murray has already "received" $93,658.48 from Blue Cross/Blue Shield, then a payment by IIGA of $6,341.52 is all the Act requires to accomplish the purpose of the Act.

In *Connecticut Insurance Guaranty Association v. Union Carbide Corporation*, 217 Conn. 371, 585 A.2d 1216, 1224–5 (1991), the Connecticut supreme court held that the purpose of providing for a reduction of a covered claim by the amount of any recovery from other available insurance was to prevent a person from twice receiving benefits for the same loss or otherwise obtaining a windfall, not to reduce the amount of a claim for a loss that remains partially unsatisfied. That reasoning is instructive here.

In the present case, Murray established at the hearing that she had incurred $104,513.09 in medical bills, $93,658.48 of which Blue Cross/Blue Shield had paid, leaving $10,854.61 in unpaid medical bills, $2,113.75 in miscellaneous expenses, and $82,197.50 in lost wages. Therefore, Murray established that she had $95,165.86 in unpaid claims. To allow IIGA to reduce the amount payable, $100,000.00, by the amount paid by Blue Cross/Blue Shield would unfairly reduce the amount of Murray's claim. The trial court correctly eliminated the payment by Blue Cross/Blue Shield from the equation, but for the wrong reason. The Blue Cross/Blue Shield payment did not need to be removed pursuant to the nonduplication of recovery statute. That payment was not within the scope of the Act because the Act does not apply to health insurance. This is not to say that Murray cannot be compensated from IIGA for her medical expenses. The policy at issue is for medical malpractice. Her medical expenses are evidence of her damages in the underlying medical malpractice action. To the extent that those damages are included in a judgment against Dr. Davis, then they would constitute an unpaid judgment and would be a covered claim. Therefore, the trial court's judgment finding that IIGA was liable to pay up to $100,000.00 of any judgment entered against Dr. Davis is correct. However, IIGA's liability needs to be modified to $95,165.86.

Judgment affirmed and modified in part, and reversed in part.

KIRSCH, J., and SHARPNACK, J., concur.