MARY LUCAS *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS INSURANCE GUARANTY FUND, Defendant-Appellee.

First District (3rd Division)    No. 76-1127

Opinion filed August 31, 1977.

Alvin R. Becker, of Block, Levy & Becker, of Chicago, for appellants.

Lord, Bissell & Brook, of Chicago (Don W. Fowler, Richard E. Mueller, and Hugh C. Griffin, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

This appeal requires the interpretation and application of the "non-duplication of recovery" provision of the Illinois Insurance Guaranty Fund Act (the Act), which is designed to protect the public against the insolvency of an insurance carrier. The issue at stake here arises when (i) a person recovers a judgment against an insured motorist in excess of the limits of the insured's policy, (ii) the insured motorist holds a policy issued by a carrier which becomes insolvent, and (iii) the injured person recovers part of his loss under the uninsured motorist provision of his own policy.

The defendant, Illinois Insurance Guaranty Fund (the Fund), contends the Act requires that the amount collected by the claimant from his own carrier be deducted from the policy limits of the policy issued by the insolvent carrier, and that the Fund is then liable for the balance. The plaintiffs' interpretation of the Act is that their recoveries from their own carriers are to be deducted from the amount of the judgments entered in

their favor. The Fund is then liable up to and including the full limits of the policies issued by the insolvent carrier, since these limits are less than the balance of the judgments. The $100 deductible amount applicable under the Act to each claim is not in dispute.

Plaintiffs, Lucas and Mastandrea, were both injured while riding in automobiles which collided in separate accidents with taxicabs insured by LaSalle National Insurance Company. They both brought actions and recovered judgments against the cab company, but prior to the trial of their actions against the cab company, LaSalle was adjudicated to be insolvent. Lucas' judgment against the cab company was $390,000, and Mastandrea's was $45,000. LaSalle's liability under its policy issued to the cab company at the time of the accident involving Lucas was $20,000, and at the time of Mastandrea's injury it was $25,000. Both Lucas and Mastandrea recovered $10,000 under the uninsured motorist provisions of their own policies and brought this declaratory judgment action to determine the application of the Act to their recovery under this provision of their own policies.

Since the relevant facts applicable to each plaintiff are identical, except for the amounts in question, this opinion deals primarily with the Lucas claim.

Lucas contended that she was entitled to the full amount of the policy ($20,000) less the $100 deductible, because her judgment ($390,000) less her recovery on her own policy ($10,000) exceeds $20,000. The Fund contends that she is entitled to recover $20,000 (the limits of the policy issued by LaSalle) less the $100 deductible and less the $10,000 Lucas recovered from her own carrier, a total of $9,900.

The trial court entered a summary judgment for $9,900, and Lucas appeals, contending her recovery against the Fund should have been $19,900. The judgment order provides that the Act requires the subtraction of any amount recovered from the claimant's own insurance policy from the amount otherwise payable by the Fund, without regard to the amount of claimant's judgment.

The theory advanced by the plaintiffs is that recovery from their own policies is a collateral source recovery providing benefits from a source wholly independent of, and collateral to, the obligor (the Fund), which should not diminish the amount of damages otherwise recoverable from the Fund. They view the monies received from the uninsured motorist provisions of their own insurance policies as collateral sources of recovery, similar to health or hospitalization insurance.

Plaintiffs rely primarily on *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247, which held that a plaintiff who had purchased three separate uninsured motorist policies from the same insurer was entitled to recover under each policy because

he had paid separate premiums under each policy. Plaintiffs here claim that since the Fund is financed exclusively by insurance companies which contribute to the Fund in direct proportion to premium income, by purchasing their own insurance they have in reality paid a premium for Fund protection just as if that money was paid directly to the Fund. See also *Kaufman v. Economy Fire & Casualty Co.* (1977), 52 Ill. App. 3d 940, 368 N.E.2d 371. But see *Squire v. Economy Fire & Casualty Co.* (1976), 43 Ill. App. 3d 113, 356 N.E.2d 1121.

Plaintiffs' contentions lack merit. The intention of the legislature in establishing the Illinois Guaranty Fund was to protect the public from losses arising from the insolvency of Illinois insurers. (Ill. Rev. Stat. 1975, ch. 73, par. 1065.82 *et seq.*) The statute defines "covered claim" as a claim within the coverage of an insurance policy to which the Act applies (that is, a policy issued by a carrier which becomes insolvent) and expressly excludes "any amount in excess of applicable limits of liability provided by an insurance policy to which this Article applies." Ill. Rev. Stat. 1975, ch. 73, par. 1065.84—3(i).

Paragraph 1065.96(a) provides against "non-duplication of recovery" as follows:

> "(a) Any claimant having a claim against his company under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. *Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under the claimant's insurance policy.*" (Emphasis added.)

These provisions demonstrate that the circuit court's computations were proper.

There is no inconsistency between the "non-duplication" provisions and the purpose of the Act. The statutory purpose is to place claimants in the same position that they would have been in if the liability insurer had not become insolvent. (Ill. Rev. Stat. 1975, ch. 73, par. 1065.82.) The Act states that the Fund is intended to protect claimants against financial loss because of the insolvency of insurance companies. The difference between the amount of the insolvent insurer's policy limits and the amount paid to claimant by his own insurer is made up by the Fund. To permit a greater recovery than would have occurred had the insurance company remained solvent would both extend the Act beyond its purpose and offend public policy by giving the Act an interpretation which results in a windfall judgment.

Plaintiffs' reliance on the "collateral source rule" and the *Glidden* decision is misplaced. The Fund is not analogous to hospital or health insurance. Rather, it was expressly devised to fill a void in insurance

coverage when an Illinois insurance company which otherwise would be responsible for coverage becomes insolvent. It is, therefore, not a collateral or independent source of recovery; rather, it is a substitution when the expected coverage ceases to exist.

The court in *Glidden* did not construe the "non-duplication of recovery" provision of the Act. The *Glidden* court merely held that where a person purchases separate uninsured motorist policies from the same insurer and pays separate premiums, recovery is permissible up to the limits on each policy. Although the Fund is financed by contributions from the insurance companies to which plaintiffs pay premiums, plaintiffs cannot be viewed as paying separate and distinct premiums to the Fund. The amount paid by the insurance company to the Fund is merely a cost of doing business that affects the cost of insurance coverage.

The recent appellate court decision in *Kaufman v. Economy Fire & Casualty Co.*, where the court permitted stacking of uninsured motorist sections of two family policies, is also inapplicable. There, the court, extending the theory of *Glidden*, held when the same company issued policies to members of the same family, who were living in the same household and paid separate premiums, the exclusionary "other insurance" clause was ambiguous and must be resolved in favor of the insureds. Lucas' claim involves the clear and unambiguous language of the Act, which requires a deduction from the coverage of her recovery under her own insurance. This interpretation is consistent with sound public policy because Lucas is covered to the same extent she would have been had LaSalle National remained solvent. (See *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 274 N.E.2d 1.) To hold otherwise would create a windfall judgment.

The judgment of the trial court awarding $9,900 to Lucas and $15,900 to Mastandrea is affirmed.

Judgment affirmed.

McNAMARA and JIGANTI, JJ., concur.