JOHN URBAN, Plaintiff-Appellant, v. LOUIS LOHAM *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—91—0580

Opinion filed March 26, 1992.

Baskin, Server, Berke & Weinstein, of Chicago (John R. Malkinson, of counsel), for appellant.

Heineke, Burke, Healy & Bodach, of Chicago (Robert C. Farrar, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, John Urban, brought a personal injury action in the circuit court of Cook County against defendants, Louis Loham and Theodore Lowe. Plaintiff sought damages for injuries allegedly incurred as a result of an automobile collision. Defendants' automobile liability insurer subsequently went into liquidation. The Illinois Insurance Guaranty Fund (Fund) assumed the carrier's obligations.

The trial court dismissed the action. The court reasoned that since plaintiff did not timely seek uninsured motorist coverage from his own insurer, then he could not recover from the Fund and, further, could not maintain his action against defendants. Plaintiff appeals, assigning error to the dismissal.

We reverse the order of the trial court and remand.

BACKGROUND

The trial court dismissed the action pursuant to section 2—619(a)(9) of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) In ruling on a section 2—619 motion to dismiss, a court may consider the pleadings, affidavits in support of the motion, answers to interrogatories, depositions, and other proofs presented by the parties. *Bloomingdale State Bank v. Woodland Sales Co.* (1989), 186 Ill. App. 3d 227, 232, 542 N.E.2d 435, 438 (and cases cited therein).

The record shows that on October 5, 1981, the automobiles of plaintiff and defendants collided in a parking lot located at Burlington and Prairie Avenues in Brookfield. On October 4, 1983, plaintiff brought a personal injury action against defendants, alleging that their negligence proximately caused the collision and his resulting injuries.

At the time the action arose, Lowe owned an automobile insurance policy issued through the Heritage Insurance Company. The policy had liability coverage up to $100,000. However, on February 25, 1986, the trial court found that Heritage was insolvent and entered an order of liquidation.

In a letter dated May 12, 1986, the Illinois Insurance Guaranty Fund (the Fund) notified plaintiff that it had assumed Heritage's obligations to its policyholders and claimants, subject to the requirements of the Illinois Insurance Guaranty Fund, found in Article XXXIV of the Insurance Code (Code). (See Ill. Rev. Stat. 1989, ch. 73, par. 1065.82 *et seq.*) Citing Code section 546 (Ill. Rev. Stat. 1989, ch. 73, par. 1065.96), the letter notified plaintiff of a Code requirement. The letter stated that if a claimant has uninsured motorist coverage in his own automobile insurance policy, he must first exhaust his rights under his own policy prior to being entitled to any payments from the Fund. The letter further stated that if plaintiff's "company denies uninsured motorist coverage, we suggest you call us to determine what verification we require to process your claim as an obligation of the Illinois Fund."

Plaintiff owned an automobile insurance policy issued by the State Security Insurance Company. The policy included uninsured motorist coverage up to $15,000. The policy required plaintiff, as a condition precedent to coverage, to file with the insurer a demand for arbitration of the claim within two years of the loss.

In November 1986, approximately six months after receiving the letter from the Fund, plaintiff's attorneys notified State Security that they represented plaintiff in the matter of the uninsured motorist claim. In January 1987, State Security requested from plaintiff copies of any special damages and proof of defendants' lack of insurance coverage. In September 1988, plaintiff mailed the requested information to State Security. In November 1988, approximately 2½ years after receiving the Fund's notification letter, plaintiff filed with State Security a demand for arbitration.

State Security denied plaintiff's claim for uninsured motorist coverage and brought a declaratory judgment action against plaintiff to determine whether he was entitled to uninsured motorist coverage. On October 12, 1990, the trial court entered judgment in favor of State Security. The trial court based its finding on the fact that plaintiff failed to demand arbitration within two years of the receipt of the Fund's notification letter.

On December 4, 1990, defendants moved to dismiss plaintiff's personal injury action pursuant to section 2—619(a)(9) of the Code of

Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) Defendants argued that plaintiff's failure to timely seek uninsured motorist coverage from his insurer constituted a failure to exhaust his rights under any other applicable insurance policy, as required by section 546(a) of the Code. (Ill. Rev. Stat. 1989, ch. 73, par. 1065.96(a).) Defendants further argued that this requirement was a statutory condition precedent for maintaining the action against them.

On January 9, 1991, the trial court granted defendants' motion to dismiss. Plaintiff timely appeals.

OPINION

■ Insurance Code section 546(a) provides as follows:

"§546. Nonduplication of recovery. (a) Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." (Ill. Rev. Stat. 1989, ch. 73, par. 1065.96(a).)

Plaintiff contends that he exhausted his rights under any other applicable insurance policy, as section 546(a) requires. Plaintiff claims that, as a result, he is entitled to maintain his lawsuit against defendants.

The parties agree that this appeal requires us to interpret the above-quoted provision. The statute does not define the extent of a claimant's obligation "to exhaust his rights" under other insurance policies.

The cardinal rule of statutory construction is to ascertain and give effect to the intention of the legislature in enacting a statute. In ascertaining the legislative intent, it is settled that a court may consider not only the language used in the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purposes to be achieved. (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341, 504 N.E.2d 84, 86.) Additionally, where the literal enforcement of a statute would result in great injustice, courts are bound to presume that the legislature did not intend such consequences, and to adopt a construction which, it is reasonable to assume, the legislature contemplated. *Penkava v. Kasbohm* (1987), 117 Ill. 2d 149, 154, 510 N.E.2d 883, 885.

■ The Fund is a nonprofit, unincorporated legal entity established in 1971 by Article XXXIV of the Insurance Code. (Ill. Rev. Stat. 1989, ch. 73, par. 1065.82 *et seq.*) In establishing the Fund, the legislature intended to protect the public from losses arising from the

insolvency of Illinois insurers. In other words, the Fund seeks to place a claimant in the same position that he would have been in if the defendant's liability insurer had been solvent. All insurance companies licensed in this State are members of the Fund as a condition of their transacting business in the State. *Adams v. Illinois Insurance Guaranty Fund* (1980), 85 Ill. App. 3d 867, 867-68, 407 N.E.2d 638; *Lucas v. Illinois Insurance Guaranty Fund* (1977), 52 Ill. App. 3d 237, 239, 367 N.E.2d 469, 470. See generally 19A J. Appleman, Insurance Law & Practice §10801 (1982); Annot., 30 A.L.R.4th 1110 (1984).

Most State insurance guaranty statutes, including that of Illinois, are very similar to the State Post-Assessment Insurance Guaranty Association Model Bill, proposed by the National Association of Insurance Commissioners. (19A Appleman §10801, at 365 n.2, quoting *Sands v. Pennsylvania Insurance Guaranty Association* (1979), 283 Pa. Super 217, 221, 423 A.2d 1224, 1225-26; Note, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause*, 74 Iowa L. Rev. 927, 932-34 (1989).) For example, the highest courts of Kansas and Massachusetts have each noted that their insurance guaranty fund statutes, including their nonduplication of recovery provisions, were "substantially similar" to that of Illinois. (*Hetzel v. Clarkin* (1989), 244 Kan. 698, 703-04, 772 P.2d 800, 804; *Vokey v. Massachusetts Insurers Insolvency Fund* (1980), 381 Mass. 386, 391, 409 N.E.2d 783, 785.) "In construing an Illinois statute, decisions of other States construing similar laws are entitled to respect and consideration." *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 660, 397 N.E.2d 511, 517.

I

■■ We first address the issue of whether plaintiff exhausted his right to his uninsured motorist coverage as Insurance Code section 546(a) requires. The provision required plaintiff to "first proceed under any rights conferred by his insurance policy," *i.e.*, his uninsured motorist coverage. (*Spearman v. State Security Insurance Co.* (1978), 57 Ill. App. 3d 393, 395, 372 N.E.2d 1008, 1009.) The rationale of nonduplication of recovery provisions such as section 546(a) has been explained as follows:

> "The purpose of the exhaustion requirement *** is to render the Fund a source of last resort in the event of insolvency. The second sentence *** states a clear legislative policy that any recovery to which a claimant is contractually entitled under his own insurance policy shall be offset to reduce the liability of the Fund." *Vokey*, 381 Mass. at 390, 409 N.E.2d at 786.

Based on this legislative policy, a plaintiff who seeks to collect from a State insurance guaranty fund must first collect from his own uninsured motorist coverage. After the plaintiff has received up to the policy limit of his uninsured motorist coverage, he is then entitled to recover from the State insurance guaranty fund up to the policy limits of the defendant's insolvent insurer, *less* the amount collected from the plaintiff's uninsured motorist coverage. In other words, the more the plaintiff receives under his own uninsured motorist coverage, the less he receives from the State insurance guaranty fund. The plaintiff thereby avoids receiving a windfall recovery. *Lucas,* 52 Ill. App. 3d at 239, 367 N.E.2d at 471, quoted in *Hetzel,* 244 Kan. at 703, 772 P.2d at 804, and *Sands,* 283 Pa. Super. at 226-27, 423 A.2d at 1228.

However, what is the result when a plaintiff knowingly settles with his insurer for less than the policy limits of his uninsured motorist coverage? Or, as in the case at bar, what is the result when a plaintiff knowingly fails to timely seek recovery under his uninsured motorist coverage?

■ The legislative policy behind section 546(a) requires a plaintiff to collect as much as he can under his uninsured motorist coverage. A plaintiff who knowingly fails to do so shall be assumed to have received the policy limits of his uninsured motorist coverage. This assumption implements the legislative intent that the Fund be a source of last resort, and that the Fund's liability be offset by any recovery to which a plaintiff is contractually entitled under his own insurance policy. Consequently, a plaintiff who makes a claim under his uninsured motorist coverage is deemed to have exhausted his rights under section 546(a), regardless of the amount that he actually receives. We note that the Kansas Supreme Court followed this reasoning and reached this result in a case with similar facts. *Hetzel,* 244 Kan. at 706-07, 772 P.2d at 806.

Indeed, the record shows that the Fund has already acted in accordance with these principles. In its May 12, 1986, notification letter to plaintiff, the Fund acknowledged the possibility that plaintiff's insurer could deny him uninsured motorist coverage. However, the letter did not say that plaintiff would be barred recovery from the Fund. Rather, the Fund stated: "we suggest you call us to determine what verification we require to process your claim as an obligation of the Illinois Fund."

We hold that plaintiff may proceed against the Fund, but any recovery from the Fund shall be offset by $15,000. This is the maximum

amount that plaintiff could have recovered from his uninsured motorist coverage had he timely sought it.

## II

■ We lastly address the trial court's dismissal of plaintiff's action against defendants. In support of the dismissal, defendants contend that the exhaustion requirement found in Insurance Code section 546(a) is a statutory condition precedent for maintaining the action against them.

We disagree. In *Herriford v. Boyles* (1990), 193 Ill. App. 3d 947, 550 N.E.2d 654, this court distinguished a plaintiff's claim against the Fund from a plaintiff's lawsuit against a tortfeasor. We noted that an insurance company, or the Fund in the case of an insolvent insurer, is not liable as the tortious wrongdoer. Rather, the insurer or the Fund merely stands ready, pursuant to the policy, to indemnify the tortfeasor for a loss. The claim against the Fund represents the amount the Fund must pay to the extent that it stands in the position of indemnifier. Section 546(a) only requires that a plaintiff must first recover any amount available under his own insurance policy before he can recover from the Fund. *Herriford*, 193 Ill. App. 3d at 952-53, 550 N.E.2d at 658.

However, the guaranty insurance fund statute does not contemplate an action directly against the Fund itself to determine a plaintiff's damages. Rather, a plaintiff's damages are determined as a collateral matter or in other proceedings. Thus, the *Herriford* court concluded that "[s]ection 546(a) is only relevant in determining the recovery from the Fund." (*Herriford*, 193 Ill. App. 3d at 952, 550 N.E.2d at 658.) As Justice Barry reasoned in his partial concurrence:

"By statute, plaintiffs here were required to first 'exhaust' their rights under [their uninsured motorist coverage]. [Citation.] But, the statute also anticipates that the injured parties will be in no worse position by virtue of the defendants' insurer's insolvency than they would have been had the insurer been solvent. Ergo, if plaintiffs injured by liable parties whose insurers are solvent are entitled to present their case to a jury for a determination of damages, then it would be an injustice incompatible with the statutory scheme to find that the plaintiffs here should be denied an opportunity to litigate their damages in a court action." *Herriford*, 193 Ill. App. 3d at 960, 550 N.E.2d at 663 (Barry, J., concurring in part and dissenting in part).

In Illinois, a tortfeasor is liable for all of the ordinary and natural consequences of his act. (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 454, 453 N.E.2d 820, 825.) In other words, a plaintiff is entitled to recover all damages that naturally and proximately flow from the commission of a tort. *Central Illinois Light Co. v. Stenzel* (1964), 44 Ill. App. 2d 388, 394-95, 195 N.E.2d 207, 210-11.

In the case at bar, the record does not show the extent of plaintiff's damages. Those damages could exceed the policy limit of his uninsured motorist coverage. Therefore, plaintiff's failure to timely seek the maximum amount from his uninsured motorist coverage cannot deprive him of the right to seek full compensation from defendants. We note that the Pennsylvania Supreme Court followed this reasoning and reached this result in a case with similar facts. *Bethea v. Forbes* (1988), 519 Pa. 422, 426-27, 548 A.2d 1215, 1217.

For the foregoing reasons, the order of the circuit court of Cook County, which dismissed plaintiff's complaint, is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.