NICK R. LONIGRO, Plaintiff-Appellee, v. GEORGE LOCKETT *et al.*, Defendants-Appellants (James Benecke, Defendant).

First District (6th Division)   No. 1—92—0304

Opinion filed September 3, 1993.

Staehlin, Jantorni & Sullivan, of Chicago (John M. Sullivan, Robert E. Harrington, Jr., and Susan L. Jantorni, of counsel), for appellants.

Patrick S. Moore, of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Nick Lonigro (Lonigro), sued the defendants, Penny Cab Company (Penny Cab), George Lockett and James Benecke, to recover for personal injuries he sustained in an automobile collision. The jury found Benecke not liable and found that Penny Cab and Lockett were liable in the amount of $40,000. (We will refer to Penny Cab and Lockett collectively as Penny Cab.) The post-trial motion of Penny Cab for judgment notwithstanding the verdict or to reduce the judgment to $25,000 was stricken on the plaintiff's motion. Penny Cab maintains that the court erred in striking the motion, that judgment should be entered here in Penny Cab's favor or, alternatively, the judgment should be reduced from $40,000 to $25,000.

On September 24, 1983, Lonigro was a passenger in a car driven and owned by Benecke when the car collided with a taxicab owned by Penny Cab. Lonigro filed suit on August 23, 1985.

At the time of the accident, Penny Cab was insured by American Druggists Insurance Company, which became insolvent after the complaint was filed. By operation of law, Penny Cab became an uninsured motorist. (Ill. Rev. Stat. 1985, ch. 73, par. 755a.) The Illinois Insurance Guaranty Fund (Fund) undertook the defense of Penny Cab. The appearance filed by the attorneys for Penny Cab on December 15, 1986, lists the Fund as the applicable insurance company. Benecke's car was insured by State Security Insurance Company (State Security) on the day of the accident. Lonigro did not have insurance of his own, but he was an insured under Benecke's policy. A copy of Benecke's policy is not in the record, but the parties do not dispute that it provided bodily injury liability coverage of $15,000 per person and uninsured motorist coverage of $15,000 per person.

On July 28, 1988, Benecke filed a "counterclaim" for contribution against Penny Cab. The record does not contain any response to the counterclaim.

On May 14, 1991, Penny Cab filed an emergency motion to reset the case for trial and alleged the following:

> "That the Co-defendant, James Benecke, has an insurance policy with State Security Insurance Co. with limits of $30,000 per occurrence and $15,000 per person.

That plaintiff is required to first exhaust his rights under any provision of any other applicable insurance policy before making a claim against the Illinois Insurance Guaranty Fund. (Ill. Rev. Stat. 1987, ch. 73, par. 1065.96(a).)"

The thrust of the motion was that Penny Cab had been led to believe that the plaintiff's damages were limited to $5,546.53 but that subsequent medical treatment the plaintiff had received on June 29, 1989, "jumped [the damages] to approximately $33,000." The increase in alleged damages, therefore, required Penny Cab to retain a medical expert. The only reasonable inference to be drawn from the motion is that Penny Cab was referring to the liability limits under the policy and not the uninsured motorist coverage.

Sometime in late 1991, Penny Cab filed a pretrial motion to dismiss the complaint or to reduce any judgment that the plaintiff might receive by $15,000. Penny Cab has not made the pretrial motion part of the record, but we gather from the subsequent order entered by the trial judge on November 14, 1991, that the motion to reduce the judgment was based on an alleged failure of the plaintiff to exhaust the uninsured motorist coverage available to the plaintiff under Benecke's policy.

The order denying the motion stated that the judge based his finding on the case of *Herriford v. Boyles* (1990), 193 Ill. App. 3d 947, 550 N.E.2d 654. The judge concluded that "a determination of liability must first be made, and Plaintiff has the right to pursue that remedy."

The case was tried on November 20, 1991, and the jury found for Lonigro and for Benecke, but against Penny Cab and assessed damages at $40,000. On November 22 and December 18, 1991, Lonigro filed citations to discover the assets of Penny Cab.

On December 18, 1991, Penny Cab filed a post-trial motion for judgment notwithstanding the verdict or to reduce the judgment to $25,000. The petition alleged in part the following:

"15. That Plaintiff knew or should have known that the Illinois Insurance Guaranty Fund was defending the matter since December 15, 1986, when the law firm of Staehlin, Jantorni & Sullivan entered its appearance in this matter.

16. That on February 3, 1987, Plaintiff's attorney, Robert Kunkle, acknowledged that he was aware that he must pursue all other remedies before proceeding against the Fund.

17. That on May 13, 1991, Plaintiff's attorney, Patrick Moore, forwarded a demand letter to attorney for Defendant

Benecke wherein he demanded the $15,000 policy limits of either the uninsured motorist policy or the liability policy.

18. That on October 14, 1991, Plaintiff's attorney, Patrick Moore, personally tendered a formal demand for arbitration of the uninsured motorist claim asserted by Plaintiff against Defendant Benecke's carrier, State Security, which was dated October 13, 1991.

19. Defendant Benecke's carrier, State Security, refuses to arbitrate said claim, alleging that the Plaintiff did not make a formal demand for arbitration within the two-year period set forth in the policy.

20. That to date Plaintiff, and State Security have not arbitrated said claim."

Lonigro responded to the post-trial motion on January 17, 1992. He first moved to strike the motion, alleging that Penny Cab did not have standing to assert a claim on behalf of the Fund. He argued alternatively that the motion should be denied on the merits. The judge struck Penny Cab's post-trial motion on the ground "that the court lacks jurisdiction to grant the relief sought." The order striking the motion also provided that the "court [made] no determination as to the remedies of the parties at law or equity."

We will first address the plaintiff's argument that Penny Cab lacks standing to pursue the appeal as well as the judge's determination that he lacked jurisdiction. Penny Cab asks this court to reverse the judgment order and to enter judgment in its favor or to reduce the judgment amount from $40,000 to $25,000, contending that Illinois case law and the Illinois Insurance Code require this result because the Fund should not pay the whole recovery where the plaintiff could have pursued a claim against State Security for $15,000.

The Fund was established in the Illinois Insurance Code to pay claims when insurance companies become insolvent. (See *Pierre v. Davis* (1987), 165 Ill. App. 3d 759, 520 N.E.2d 743.) Penny Cab's argument is based on section 546(a) of the Insurance Code (Ill. Rev. Stat. 1991, ch. 73, par. 1065.96(a)), which provides:

"Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy."

Although Penny Cab disputes the plaintiff's characterization of the January 17, 1992, order as finding no standing, it is clear to us

that the judge accepted the plaintiff's argument that Penny Cab did not have standing when he stated that he did not have jurisdiction. *Cf. People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 560 N.E.2d 303.

The issue of standing in a case involving the Fund and exhaustion of other insurance has not been addressed previously by Illinois courts. But as a general rule, a party must have standing to assert a claim before a court may be invested with jurisdiction to hear the claim, and Illinois courts have explained that in determining standing the "primary focus is whether the party seeking adjudication has a personal stake in the outcome of the controversy." *Svoboda v. Department of Mental Health & Developmental Disabilities* (1987), 162 Ill. App. 3d 366, 368, 515 N.E.2d 446; see also *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298.

■ At the outset, we disagree with the plaintiff that the Fund's possible relief is restricted to an action for declaratory judgment. Judicial economy would not be served by such a rule in this case. There are cases where the Fund has had its obligations decided in declaratory judgment actions. (See, *e.g., Illinois Insurance Guaranty Fund v. Lockhart* (1987), 152 Ill. App. 3d 603, 504 N.E.2d 857; *Beatrice Foods Co. v. Illinois Insurance Guaranty Fund* (1984), 122 Ill. App. 3d 172, 460 N.E.2d 908; *Lucas v. Illinois Insurance Guaranty Fund* (1977), 52 Ill. App. 3d 237, 367 N.E.2d 469.) But the fact that there are cases where similar issues were litigated by the Fund in declaratory judgment actions does not mean that declaratory judgment is the sole and exclusive remedy available to the Fund.

■ Penny Cab correctly notes that the extent of a plaintiff's recovery from the Fund has been adjudicated in other cases, although the party whose insurer had become insolvent, and not the Fund, participated in the appeal. (See *Norberg v. Centex Homes Corp.* (1993), 247 Ill. App. 3d 267; *Urban v. Loham* (1992), 227 Ill. App. 3d 772, 592 N.E.2d 292; *Cardiel v. Warren* (1989), 191 Ill. App. 3d 816, 548 N.E.2d 1081; *Herriford v. Boyles* (1990), 193 Ill. App. 3d 947, 550 N.E.2d 654; *Pierre v. Davis* (1987), 165 Ill. App. 3d 759, 520 N.E.2d 743.) The question of standing was not raised in those cases, but the failure of the parties to raise the question of jurisdiction would not be a bar to the appellate court from raising the question of jurisdiction *sua sponte*. It may be fairly argued that the appellate court in each of those cases tacitly recognized the existence of the defendant's standing.

Other cases have made it clear that a defendant remains liable for any judgment against him despite the presence of the Fund, which is

acting only as a regular insurance company indemnifying its insureds (*e.g., Urban*, 227 Ill. App. 3d 772, 592 N.E.2d 292; *Herriford*, 193 Ill. App. 3d 947, 550 N.E.2d 654). The *Herriford* court explained:

"An insurance company (or the Fund, in the case of an insolvent insurance company) is not liable as the tortious wrongdoer, but simply stands ready *** to indemnify the tortfeasor." (*Herriford*, 193 Ill. App. 3d at 952.)

Thus, the tortfeasor still is liable, with or without the Fund. The *Urban* court quoted this *Herriford* language and stated that "a plaintiff [still] is entitled to recover all damages that naturally and proximately flow from the commission of a tort" when the Fund is involved in a case. *Urban*, 227 Ill. App. 3d at 779.

In *Pierre v. Davis*, (1987), 165 Ill. App. 3d 759, 761, 520 N.E.2d 743, the court noted that the plaintiff "would be entitled to recover the balance from the defendant *or* the Fund." (Emphasis added.) We conclude, therefore, that the plaintiff's judgment could be collected from Penny Cab or its insurance company, in this case, the Fund. We therefore judge that Penny Cab had standing to argue that the judgment should be reduced because the judgment was against Penny Cab itself, and not against the Fund. This is reflected in the two citations to discover Penny Cab's assets filed by the plaintiff after the jury's decision. For these reasons we conclude that the motion to strike Penny Cab's petition should have been denied.

We turn now to the parties' alternative arguments which are addressed to the merits of the case. Penny Cab's brief is restricted to the argument that the judgment should be reduced. Penny Cab argues that the plaintiff's failure to arbitrate the claim against State Security violated section 546(a) and that the possible recovery of $15,000 should be subtracted from the $40,000 verdict. The plaintiff contends that he did exhaust the possibility of recovery from State Security by proceeding to trial against Benecke and that he did not have to exhaust a claim under another policy unless it was a policy in his name. At the outset, we express agreement with the trial judge's refusal to apply one of the cases cited by Penny Cab, *Kauz v. Friend*, which was an unpublished order entered under Supreme Court Rule 23 and may not be cited as precedent in this completely unrelated case. (134 Ill. 2d R. 23.) The parties generally agree which other cases govern this appeal but disagree on their application.

One of the first Illinois cases addressing section 546(a) was *Lucas v. Illinois Insurance Guaranty Fund* (1977), 52 Ill. App. 3d 237, 367 N.E.2d 469, in which the plaintiffs were involved in separate automobile collisions with the same taxicab company. They sued the taxicab

company, which had $20,000-per-accident insurance coverage at the time of the accident. Later, the taxicab company's insurer became insolvent, and the Fund took over its obligations. A judgment was entered against the defendants in favor of each plaintiff for more than $20,000. The plaintiffs also received $10,000 each from their own insurance companies. The opinion does not state whether the judgment or the recovery from the plaintiffs' own insurers came first. (*Lucas*, 52 Ill. App. 3d at 238.) The Fund argued that each plaintiff could recover only $10,000 from the Fund under section 546(a), resulting in a total recovery of $20,000 each, and the trial court agreed.

The appellate court noted that the "intention of the legislature in establishing the [Fund] was to protect the public from losses arising from the insolvency of Illinois insurers." (*Lucas*, 52 Ill. App. 3d at 239.) At the time the case was decided by the appellate court, section 546(a) was almost identical to the current section, but provided that "[a]ny claimant having a claim against *his* company under any provision in *his* insurance policy" must first exhaust his policy. (Emphasis added.) (*Lucas*, 52 Ill. App. 3d at 239.) The court explained that section 546(a) "provides against 'non-duplication of recovery' " and stated that this provision is consistent with "the statutory purpose [of] plac[ing] claimants in the same position that they would have been in if the liability insurer had not become insolvent." (*Lucas*, 52 Ill. App. 3d at 239.) Further, the appellate court found that to allow a larger recovery than the plaintiff would receive with a solvent defendant liability insurer would "offend public policy" and result in "a windfall judgment." (*Lucas*, 52 Ill. App. 3d at 239.) Applying those principles, the appellate court upheld the trial judge's decision.

In *Spearman v. State Security Insurance Co.* (1978), 57 Ill. App. 3d 393, 372 N.E.2d 1008, the trial judge determined that the plaintiff's solvent insurance company did not have to arbitrate her claim because she did not first attempt to collect from the Fund, which had taken over the other driver's insolvent insurance company's obligations. The plaintiff appealed and argued that section 546(a) requires exhaustion of a plaintiff's own insurance policy before the Fund must pay. The applicable section 546(a) in *Spearman* was the version construed in *Lucas*. Citing *Lucas*, the *Spearman* court explained that "[t]his language makes it clear that an insured must first proceed under any rights conferred by his insurance policy." (Emphasis added.) (*Spearman*, 57 Ill. App. 3d at 395.) The court noted that the defendant insurance company could not take premiums paid by the plaintiff, and then refuse to cover her claim merely because the other driver's

defense was undertaken by the Fund. Therefore, the court reversed the trial judge and remanded the case for arbitration.

In 1990, the Third District Appellate Court decided *Herriford v. Boyles* (1990), 193 Ill. App. 3d 947, 550 N.E.2d 654, the case which the trial judge in this case found controlling. The current version of section 546(a) was at issue in *Herriford*. The plaintiffs suffered personal injuries in an accident and sued two defendants, whose insurer became insolvent. The Fund assumed the defense of the case, and the plaintiffs proceeded to arbitration to settle claims made against their own insurance company. Each plaintiff received money pursuant to the arbitration. The defendants, represented by the Fund, then moved to dismiss the suit on collateral estoppel grounds, arguing that a determination of liability and damages was completed in the arbitration proceedings. The plaintiffs argued that the application of collateral estoppel would deprive them of their constitutional right to a trial by jury. The appellate court majority held that the plaintiffs were barred from relitigating the issue of damages because the issue had been decided in arbitration proceedings.

The trial judge denied the defendants' motion to dismiss and certified two questions under Supreme Court Rule 308 (107 Ill. 2d R. 308):

> " 'A. Does Ill. Rev. Stat. (1981), ch. 73, par. 755a require that an insured submit uninsured motorist claims to arbitration or does the statue merely require that insurance contracts afford the insured the option of arbitration?'

And

> 'B. Do principles of *res judicata* and/or collateral estoppel under the circumstances of this case preclude plaintiffs from litigating claims which have heretofore been arbitrated to conclusion under the uninsured motorist coverage of plaintiffs' automobile policy?' " *Herriford*, 193 Ill. App. 3d at 949.

A unanimous appellate court answered the first question by interpreting the statute to mean that uninsured motorist claims must be arbitrated. In answer to the second question a majority of the court held that the plaintiffs were collaterally estopped from relitigating the amount of their damages in the common law action against the defendants because the issue of damages had been decided in the arbitration proceedings. The majority discussed *Lucas, Spearman* and section 546(a) and stated:

> "We find nothing in the statute which would have prevented the plaintiffs from pursuing an action to judgment against the defendants prior to asserting their claims under their uninsured motorist coverage. ***

\*\*\*

\*\*\* [T]he plaintiffs could have continued the action against the defendants and received a judgment in the trial court, as did the plaintiffs in *Lucas*, before they asserted their uninsured motorist claims." *Herriford*, 193 Ill. App. 3d at 951-52.

The majority distinguished *Spearman*, explaining that "[u]nder the provisions of section 546(a), before a claimant can recover from the Fund, the claimant must first recover any amounts available under the claimant's own insurance policy," but that "[s]ection 546(a) is only relevant in determining the recovery from the Fund." (*Herriford*, 193 Ill. App. 3d at 952-53.) Thus, the *Herriford* court did not follow the *Spearman* implied direction that a plaintiff must first proceed against his own insurance company. We read *Herriford* to mean that a plaintiff need not first adjudicate his claim under the uninsured motorist provisions of his policy, but if he does, the findings in the arbitration proceedings will collaterally estop *him* from relitigating those findings in any other proceedings.

Recently, the First District Appellate Court discussed section 546(a) in *Urban v. Loham* (1992), 227 Ill. App. 3d 772, 592 N.E.2d 292, in which the plaintiff sued two defendants for injuries received in an automobile collision. The defendants' insurer went into liquidation, and the Fund assumed its obligations. The trial judge granted the defendants' motion to dismiss the complaint, finding that the plaintiff's failure to demand arbitration within the two-year arbitration provision of his own insurance policy precluded him from recovering from the Fund and thus precluded him from proceeding against the defendants.

The appellate court held that the plaintiff had knowingly failed to file his demand for arbitration within the period of time required under his policy and, therefore, was assumed to have received the policy limits of his uninsured motorist coverage. The court, however, reversed the dismissal order on the ground that a plaintiff's claim against the Fund is different from a plaintiff's lawsuit against a tortfeasor. The court concluded that the plaintiff's failure to timely seek the maximum amount from his uninsured motorist coverage could not deprive him of the right to seek full compensation from the defendants but that any recovery he might receive would be subject to a setoff of the maximum amount of the uninsured motorist coverage.

The cases we have discussed and this case illustrate the quandary in which injured persons are placed when the tortfeasor's insurer subsequently becomes insolvent. Such injured persons are required by the statute "first to exhaust [their] rights under any other insurance pol-

icy which may be applicable to the claim." The statute does not advise the injured persons what steps they must take to "exhaust their rights" nor when they must exhaust them. The injured persons are faced with conflicting opinions such as *Spearman*, which tells them that they *must* proceed first against their own uninsured motorist carrier, and *Herriford*, which tells them they have an option to proceed first against either their uninsured motorist carrier or the insolvent tortfeasor.[1] *Herriford* also warns them that, if they proceed against their uninsured motorist carrier, they *might* waive their right to a jury trial and be collaterally estopped from proceeding against the tortfeasor. We say, "might waive their right," because, as the dissenting opinion in *Herriford* points out, the issue is not free from doubt. The issue is complicated further by the question of whether the defendant in the common law action would be collaterally estopped by any findings in the arbitration proceedings and whether the insurance carrier would be collaterally estopped by any findings in the common law action. We make that observation because of the lack of privity between the insurance carrier and the defendants in the common law action. A plaintiff might well have to litigate the issues twice. In our judgment, section 546(a) cries out for clarification by the legislature, but until the legislature acts, it is the function of the courts to construe section 546(a) as it exists.

In *Urban v. Loham* the court spoke:

> "The cardinal rule of statutory construction is to ascertain and give effect to the intention of the legislature in enacting a statue. In ascertaining the legislative intent, it is settled that a court may consider not only the language used in the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purposes to be achieved. [Citation.] Additionally, where the literal enforcement of a statute would result in great injustice, courts are bound to presume that the legislature did not intend such consequences, and to adopt a construction which, it is reasonable to assume, the legislature contemplated. [Citation.]" 227 Ill. App. 3d at 775.

The legislative intent of section 546(a) is to prevent a double recovery by a claimant; it was never the intent of the legislature to deprive a claimant of the full amount of the award to which he is enti-

---

[1] *Spearman* conflicts with another opinion on what constitutes exhaustion under section 546(a). We will discuss this conflict later.

tled. The legislative intent is to bar both the claimant and the Fund from a "windfall."

■ We must first determine what the legislature intended that a a claimant must do to "exhaust" his claim under section 546(a). In *Urban v. Loham*, the court said that "a plaintiff who *makes a claim* under his uninsured motorist coverage is deemed to have *exhausted* his rights under section 546(a), regardless of the amount he actually receives." (Emphasis added.) (*Urban*, 227 Ill. App. 3d at 777.) In *Spearman*, however, the court said the plaintiff did not exhaust "her rights under her policy when she merely filed her claim under the policy and defendant refused it." (*Spearman*, 57 Ill. App. 3d at 395.) We do not agree with the pronouncement in *Urban* that the requirements of section 546(a) are met merely with the filing of a claim, but we do believe that the filing of a claim for arbitration is a necessary first step in the process of exhaustion of rights under section 546(a). We judge, therefore, that the plaintiff must have made at least a claim for arbitration. The plaintiff did so in this case, but the claim was denied by Benecke's carrier on the ground that it was not timely.[2] In the absence of Benecke's policy, again we assume that the policy provided that a claim for arbitration must be made within two years of the time of the accident. The accident occurred in 1983, and Penny Cab's insurer became insolvent in 1986. Obviously, the plaintiff could never have complied within the two-year term of the Benecke policy. The question then becomes: When should the plaintiff have filed the claim?

In *Urban v. Loham*, a trial court on February 25, 1986, found that the defendant's insurer was insolvent. On May 12, 1986, the Fund notified the plaintiff by letter that it had assumed the insolvent carrier's obligations to its policy holders and claimants and also notified the plaintiff of the requirements of section 546(a). The letter stated that if a claimant had uninsured motorist coverage in his own automobile insurance policy, he must first exhaust his rights under his own policy before being entitled to any payments from the Fund. The letter further stated that if the plaintiff's "company denies uninsured motorist coverage, we suggest you call us to determine what verification we require to process your claim as an obligation of the Illinois Fund." (*Urban*, 227 Ill. App. 3d at 774.) Approximately six months after receiving the letter from the Fund, the plaintiff's attorney notified the plaintiff's insurer that he represented the plaintiff in the matter

---

[2]We need not and do not decide what further steps, if any, a claimant must take if his claim is denied by his insurer. That is not an issue in this case.

of the uninsured motorist claim. In January 1987, the plaintiff's insurer requested from the plaintiff copies of any special damages and proof of the defendants' lack of insurance coverage. In September 1988 the plaintiff mailed the requested information to his insurer. In November 1988, approximately 2½ years after receiving the Fund's notification letter, the plaintiff filed with his insurer a demand for arbitration.

The trial judge held that the plaintiff's suit against the defendant was barred because the plaintiff did not file his demand within two years of the receipt of the Fund's notification letter. The appellate court agreed that the plaintiff knowingly failed to timely seek recovery under his uninsured motorist coverage and emphasized the notification letter from the Fund:

> "In its May 12, 1986, notification letter to plaintiff, the Fund acknowledged the possibility that plaintiff's insurer could deny him uninsured motorist coverage. However, the letter did not say that plaintiff would be barred recovery from the Fund. Rather, the Fund stated: 'we suggest you call us to determine what verification we require to process your claim as an obligation of the Illinois Fund.' " *Urban*, 227 Ill. App. 3d at 777.

Neither the Illinois guaranty fund act (Ill. Rev. Stat. 1991, ch. 73, par. 1065.82 *et seq.*) nor the plan of operations submitted by the chairman of the Fund to the Director of Insurance pursuant to the Act (Ill. Rev. Stat. 1991, ch. 73, par. 1065.89) contains any provision which would mandate that the Fund send to any claimant a letter such as is described in *Urban*. We have been informed by the Fund and the attorney for Penny Cab that the letter referred to in *Urban* is a form letter and, as a matter of general policy, is sent to all claimants when the Fund assumes responsibility over an insolvent insurance carrier.

Under Penny Cab's theory of the case, we must impute to the plaintiff knowledge of the fact that Penny Cab became an uninsured motorist by operation of law; that he, the plaintiff, was an uninsured motorist under Benecke's policy; and that section 546(a) requires that he take some steps under the uninsured motorist provision of Benecke's policy even though the two-year period for filing claims under the policy had expired. The facts that Penny Cab became an uninsured motorist by operation of law and that section 546(a) requires that the plaintiff take some steps under the uninsured motorist provision of Benecke's policy may not actually be known to the claimant, but they are to the Fund. Obviously, section 546(a) was enacted for the benefit of the Fund. Therefore, fundamental fairness requires that the Fund take some affirmative steps to apprise claimants of their ob-

ligations under section 546(a). Approval of knowing inaction on the part of the Fund can inure only to the benefit of the Fund and could lead to the unjustified reduction of many legitimate claims. Such a result could never have been the intent of the legislature in the enactment of section 546(a).

We believe that the general policy of the Fund as represented by the letter used in *Urban* is a fair one. The letter puts the plaintiff on notice that the Fund intends to invoke its rights under section 546(a), and it informs the plaintiff of his own obligations under section 546(a). We believe, therefore, that the controlling question in this case is when the plaintiff was first aware that he was obliged to take some steps under Benecke's policy to pursue a claim under the uninsured motorist provision of the policy. In this regard we note that Penny Cab's post-trial motion alleged that "on February 3, 1987, Plaintiff's attorney, Robert Kunkle, acknowledged that he was aware that he must pursue all other remedies before proceeding against the Fund." The factual allegations in the post-trial motion, however, were never reached because the order granting the motion to strike made any answer by the plaintiff unnecessary. Moreover, judging from the plaintiff's argument in this court, that allegation could mean that the "remedy" the plaintiff's attorney acknowledged he must pursue refers to the suit against Benecke. Under these circumstances, we believe that the plaintiff should be required to file an answer to the allegations of the post-trial motion and that the trial judge should conduct a hearing. If the plaintiff or his attorney did know that the plaintiff was required to file a claim with Benecke's insurer and did not do so until more than two years after he learned that he was required to file a claim, he clearly falls within the facts of *Urban* and the judgment of $40,000 should be reduced to $25,000. On the other hand, if the plaintiff or his attorney was not aware within the two-year period beginning on the date of Penny Cab's insurer's insolvency of his obligation under section 546(a), Penny Cab's motion to reduce the judgment should be denied.

Contrary to the plaintiff's argument, we hold that his obligations under section 546(a) were not completely met by his filing suit against Benecke. We also hold that the fact that the plaintiff was not a named insured in Benecke's policy is not controlling; it is fair to assume that the plaintiff, represented by an attorney, would know that he, as a passenger, was an insured under Benecke's policy.

We note that the letter in *Urban* was sent in May 1986. Penny Cab's insurer became insolvent sometime after the suit was filed in August 1985. The attorneys hired by the Fund filed their appearance

in December 1986. It is a fair inference that the practice of sending letters such as the one sent in *Urban* existed in December 1986. A pertinent question is whether a letter such as was sent in *Urban* was sent to the plaintiff in this case. By this observation, we do not mean to suggest that chargeable knowledge of the plaintiff's obligations under section 546(a) is restricted only to knowledge gathered from a letter sent by the Fund to the claimant.

For these reasons, the judgment in favor of the plaintiff is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

RAKOWSKI and GIANNIS, JJ., concur.