FRANK HASEMANN *et al.*, Plaintiffs-Appellees, v. KAREN WHITE *et al.*, Defendants-Appellants (Constance Gilham, Defendant).

First District (3rd Division)   No. 1—95—1467

Opinion filed September 25, 1996.—Rehearing denied November 4, 1996.

GREIMAN, J., dissenting.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin and Mark R. Goodman, of counsel), for appellants.

Jeffrey S. Deutschman, of Chicago, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Plaintiffs, Frank Hasemann (Frank), Annette Hasemann (Annette), and Nanette Buccieri, brought this action in the circuit court of Cook County against defendants, Karen White, Steven Hutcherson, and Constance Gilham, seeking to recover for personal injuries sustained in an automobile collision. Following mandatory arbitration, the trial court entered judgment in favor of plaintiffs. Defendants filed a motion for a setoff of the arbitration award in the amount of plaintiffs' entire uninsured motorist policy limits, which the circuit court denied. Defendants now appeal the circuit court's judgment to this court pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301). Gilham is not a party to this appeal.

For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

On February 23, 1990, an automobile collision occurred between two motor vehicles; White and Hutcherson were the occupants of one vehicle, and Frank and Buccieri were the occupants of the other. Frank and Buccieri sustained personal injuries and brought this action against White and Hutcherson.

At the time of the accident, plaintiffs were insured by Country Companies (hereinafter Country) with an automobile liability policy of $50,000 per person/$100,000 per accident and it also included uninsured motorist coverage with the same policy limits. Defendants were covered by Prestige Casualty Company (hereinafter Prestige) with policy limits of $20,000 per person/$40,000 per accident. Prestige appointed attorneys for defendants.

On August 16, 1994, Prestige became insolvent and was placed in liquidation. The Illinois Insurance Guaranty Fund (hereinafter Fund) stepped in pursuant to Illinois Insurance Guaranty Fund Act (Act) (215 ILCS 5/532 *et seq.* (West 1994)). The Fund took over the defense of defendants. Defendants were now regarded as uninsured motorists, because under section 143a, a motorist insured by an insolvent insurer is considered an uninsured motorist (215 ILCS 5/143a (West 1994)). Plaintiffs filed a motion to stay the proceedings while they filed a claim against their own insurance company under the uninsured motorist provision of their policy. Consequently, plaintiffs made a written demand for arbitration. Country negotiated a settlement of $7,500 for Frank and $3,000 for Buccieri, which plaintiffs accepted.

Plaintiffs then continued their case in the circuit court and the case was sent to mandatory arbitration. The arbitrators awarded $9,000 to Frank and $4,000 to Buccieri. No rejection of the award was filed within the required time.

Defendants filed a motion for setoff of plaintiffs' entire uninsured policy pursuant to the "non-duplication of recovery provision" in the Act (215 ILCS 5/546(a) (West 1994)). Defendants argue that since plaintiffs settled rather than arbitrated their uninsured motorist claim, defendants were entitled to a setoff consisting of the limits of plaintiffs' uninsured motorist coverage. The trial court denied the motion and concluded that defendants were only entitled to a partial setoff. The trial court entered judgment against defendants in the amount of $616.50 for Hasemann and $425.50 for Buccieri.

## ISSUE PRESENTED FOR REVIEW

The sole issue is whether plaintiffs first exhausted their rights under their own uninsured motorist policy before filling a claim against defendants and the Fund.

## OPINION

■ The Illinois Insurance Guaranty Fund is a statutory entity created by the General Assembly to provide a limited form of relief to claimants and insureds when insurance companies become insolvent. The purpose is to place claimants in the same position that they would have been in if the liability insurer had not become

insolvent. *Lucas v. Illinois Insurance Guaranty Fund*, 52 Ill. App. 3d 237, 367 N.E.2d 469 (1977). The Act does not permit double recovery for plaintiffs. Section 546(a) of the Insurance Code provides as follows:

> "Non-duplication of recovery. (a) Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." 215 ILCS 5/546(a) (West 1994).

Defendants contend that plaintiffs must first exhaust all their rights under their uninsured motorist policy with Country before they can recover any amount from the Fund or from defendants. Defendants further contend that plaintiffs should not be allowed to settle for less than the uninsured motorist policy limits, and then seek to recover the balance of their judgment from the Fund, whose limited assets ultimately come from the insurance-buying public of Illinois. Plaintiffs claim that they did indeed exhaust their rights as required under section 546(a). We agree with plaintiffs.

■ We first look to the language and the intent of section 546(a). "In interpreting a disputed provision a court should first consider the statutory language itself as the best indication of the intent of the drafters. [Citation.] Terms that are unambiguous, when not specifically defined, must be given their plain and ordinary meaning." *People ex rel. Village of McCook v. Indiana Harbor Belt R.R. Co.*, 256 Ill. App. 3d 27, 29 (1993); see also *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450 (1990). In establishing the legislative intent, it is settled that a court may consider not only the language used in the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purposes to be achieved. *Urban v. Loham*, 227 Ill. App. 3d 772, 775, 594 N.E.2d 292 (1992), citing *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337 (1987). "It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent." *Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75, 84 (1970).

In *Urban v. Loham*, the appellate court stated:

> "[W]hat is the result when a plaintiff knowingly settles with his insurer for less than the policy limits of his uninsured motorist coverage? Or as in the case at bar, what is the result when a plaintiff knowingly fails to timely seek recovery under his uninsured motorist coverage?

The legislative policy behind section 546(a) requires a plaintiff to collect *as much as he can* under his uninsured motorist coverage. A plaintiff who knowingly fails to do so shall be assumed to have received the policy limits of his uninsured motorist coverage. This assumption implements the legislative intent that the Fund be a source of last resort, and that the Fund's liability be offset by any recovery to which a plaintiff is contractually entitled under his own insurance policy. *Consequently, a plaintiff who makes a claim under his uninsured motorist coverage is deemed to have exhausted his rights under section 546(a), regardless of the amount that he actually receives.*" (Emphasis added.) *Urban,* 227 Ill. App. 3d at 777.

Yet, this court held in a later case that it "[did] not agree with the pronouncement in *Urban* that the requirements of section 546(a) are met merely with the filing of a claim, but we do believe that the filing of a claim for arbitration is a necessary first step in the process of exhaustion of rights under section 546(a)." *Lonigro v. Lockett,* 253 Ill. App. 3d 308, 319, 615 N.E.2d 265 (1993).

We believe that the intent of the legislature in pronouncing section 546(a) was to prevent claimants from receiving a double recovery or a windfall from the Fund at the cost of the insurance-buying public. It is evident that the General Assembly needs to clarify what constitutes an exhaustion of rights under section 546(a), because it is not explicitly written in the statute. Courts have tried to interpret this section, which undoubtedly has led to the conflicting case law. See *Spearman v. State Security Insurance Co.,* 57 Ill. App. 3d 393, 372 N.E.2d 1008 (1978) (court held that section 546(a) makes it clear that an insured must first proceed under any rights conferred by the insurance policy before the Fund is required to pay); but see *Herriford v. Boyles,* 193 Ill. App. 3d 947, 550 N.E.2d 654 (1990) (court found that plaintiffs were collaterally estopped from relitigating the amount of their damages in the common law action against the defendants because the issue of damages had been decided in the arbitration proceedings). Thus, "injured persons are faced with conflicting opinions such as *Spearman,* which tells them that they *must* proceed first against their own uninsured motorist carrier, and *Herriford,* which tells them they have an option to proceed first against either their uninsured motorist carrier [and possibly waiving their right to a jury trial] or the insolvent tortfeasor." (Emphasis in original.) *Lonigro,* 253 Ill. App. 3d at 318. Clearly, the filing of a claim is the first step under section 546(a). However, it is up to the legislature to determine what constitutes an exhaustion of rights. We believe a plain and ordinary meaning of section 546(a) is that the Fund is a

source of last resort and will only be required to pay claims after an injured party has received an amount of money from its own policy, regardless of the amount.

Moreover, section 546(a) expressly limits the amount of setoff to what is actually recovered from the uninsured motorist carrier as it states that "[a]ny amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." 215 ILCS 5/546(a) (West 1994). However, nowhere does it state that the setoff must be the *entire* amount of the uninsured motorist policy, such as in this case, a setoff amount of $50,000. Nor do defendants cite to *any* Illinois authority that would declare such a rule.

■ Under these facts, we recognize that plaintiffs filed a claim against their insurance company, Country. Plaintiffs also filed a written demand for arbitration, which the record on appeal reflects. Plaintiffs and Country ended up settling the claim, wherein Frank received $7,500 and Buccieri received $3,000. Subsequently, plaintiffs continued their case against defendants in the circuit court. At that point, plaintiffs had exhausted their rights as required by section 546(a). Clearly, plaintiffs did more than just merely file a claim against their insurance, as was required by the *Urban* court and the *Lonigro* court. Furthermore, there is no proof that plaintiffs knowingly settled for an amount less than their actual damages. Just because the arbitrators awarded plaintiffs more than they received in a settlement with their insurance company does not mean they purposely settled for less than they deserved. It is unreasonable to force plaintiffs to receive up to the limit of $50,000 from their insurance before filing a claim against the Fund. That would go against Illinois' public policy of promoting settlements. Accordingly, we find that plaintiffs did exhaust their rights within the meaning of section 546(a) and, therefore, are entitled to receive from the Fund the difference between their settlement and the arbitration award, $616.50 for Frank and $425.50 for Buccieri.

In light of the foregoing, we affirm the judgment of the trial court.

Affirmed.

CERDA, J., concurs.

JUSTICE GREIMAN, dissenting:

The majority opinion is thoughtful and does not yield an unfair result. The problem with the interpretation of section 546(a) (215

ILCS 5/546(a) (West 1994)) is that all of the cases cited contain snippets that allow almost any conclusion. See *Urban v. Loham*, 227 Ill. App. 3d 772 (1992).

The statute establishing the Fund provides that a claimant is "required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim." 215 ILCS 5/546(a) (West 1994). Cases cited mandate that the claimant must file a claim with his own carrier under the uninsured motorist clause and that the filing must be timely.

The issue presented to us is whether the claimant may settle the claim with his own carrier and still be deemed to have exhausted his rights. Clearly when the claimant effects a settlement, he has waived some of his rights, *i.e.*, the right to proceed to a hearing that would yield the highest amount which he could recover. By settling, he has released and waived this right.

Where a claimant releases a right to recover, can we consider that he has exhausted his rights in attempting to collect as is required by the Act? If the claimant can settle with his own carrier and then proceed against the Fund, is there any incentive to seriously pursue the claim against his own carrier?

The majority does not even require that the settlement be in good faith or be determined a fair settlement. At least one case has stated that "[u]nder the provisions of section 546(a), before a claimant can recover from the Fund, the claimant must first recover *any* amounts available under the claimant's own insurance policy." (Emphasis added.) *Herriford v. Boyles*, 193 Ill. App. 3d at 952-53. Neither the case nor the majority opinion makes clear whether "amounts available" means an amount that the parties would agree upon or the amount of the coverage afforded under the policy.

In *Urban*, upon which the majority relies, the court was faced with a claimant who had failed for $2^1/2$ years to file a claim against his own insurance carrier so that the language of the decision must be limited to the facts of that case.

While I believe that the majority's conclusion is fair in light of the smallness of many of the claims and the lack of interest most lawyers will have in being required to prove their case before an arbitrator and then be required to prove it again in his claim against the Fund, we must give the words employed by the General Assembly their natural meaning. They do not give a claimant the right to unilaterally decide what is a fair apportionment between his own carrier and the Fund.

Under the majority's rule, the claimant could settle a $10,000 claim for $1 and seek the balance from the Fund since there is no requirement that the settlement be in good faith.

190

The majority is correct in the observation that the solution lies with the legislature and that the Act cries for amendment to explicitly inform the claimants of their rights and the flexibility that they have in compromising a portion of their claim.